**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

### SUCV2004-04918
### Downing v Mass Port Authority et al

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 11/10/2004 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 11/30/2004 | **Session** | E - Civil E | | |
| **Origin** | 1 | **Case Type** | E17 - Civil Rights Act (12.011H-1) | | |
| **Lead Case** | | **Track** | A | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 02/08/2005 | **Answer** | 04/09/2005 | **Rule12/19/20** | 04/09/2005 |
| **Rule 15** | 02/03/2006 | **Discovery** | 12/30/2006 | **Rule 56** | 02/28/2007 |
| **Final PTC** | 06/28/2007 | **Disposition** | 11/10/2007 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
King Downing
Active 11/10/2004

**Private Counsel 548112**
Peter B Krupp
Lurie & Krupp
1 McKinley Square
Boston, MA 02109
Phone: 617-367-1970
Fax: 617-367-1971
Active 11/10/2004 Notify

**Defendant**
Mass Port Authority
Served: 11/10/2004
Served (answr pending) 11/26/2004

**Private Counsel 502506**
Roscoe Trimmier
Ropes & Gray
1 International Place
Boston, MA 02110
Phone: 617-951-7000
Fax: 617-951-7050
Active 11/30/2004 Notify

**Private Counsel 651718**
Sarah Levine
One International
Boston
Boston, MA 02110
Active 11/30/2004 Notify

**Defendant**
Mass Dept of State Police
Served: 11/10/2004
Served (answr pending) 11/26/2004

Commonwealth of Massachusetts
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

## SUCV2004-04918
### Downing v Mass Port Authority et al

**Defendant**
Thomas G Robbins Supt
Served: 11/22/2004
Served (answr pending) 11/26/2004

**Defendant**
Paul J DiDomenica
Served: 11/15/2004
Served (answr pending) 11/26/2004

**Defendant**
Thompson
Served: 11/22/2004
Served (answr pending) 11/26/2004

**Defendant**
Croxton
Served: 11/17/2004
Served (answr pending) 11/26/2004

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 11/10/2004 | 1.0 | Complaint & Jury demand |
| 11/10/2004 |  | Origin 1, Type E17, Track A. |
| 11/10/2004 | 2.0 | Civil action cover sheet filed |
| 11/15/2004 | 3.0 | Motion for Appointment of Carol Wilkinson, as Special Process Server Filed and ALLOWED (Dated 11/10/04) |
| 11/26/2004 | 4.0 | SERVICE RETURNED: Mass Port Authority (Defendant) by service Diana Wesoloski, at Mass Port Authority, person in charge on 11/10/04 |
| 11/26/2004 | 5.0 | SERVICE RETURNED: Mass Dept of State Police (Defendant) by serving in hand Sgt. Susan Rotenberg, person in charge on 11/10/04 |
| 11/26/2004 | 6.0 | SERVICE RETURNED: Thomas G Robbins Supt (Defendant) by serving in hand to Eleanor C Sinnot, Chief Legal Counsel on 11/12/04 |
| 11/26/2004 | 7.0 | SERVICE RETURNED: Paul J DiDomenica (Defendant) by serving in hand to Peter DiDomenica on 11/15/04 |
| 11/26/2004 | 8.0 | SERVICE RETURNED: Thompson (Defendant) by serving in hand to State |

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

## SUCV2004-04918
### Downing v Mass Port Authority et al

| Date | Paper | Text |
|---|---|---|
| | 8.0 | Police Trooper Thompson on 11/22/04 |
| 11/26/2004 | 9.0 | SERVICE RETURNED: Croxton (Defendant) by serving in hand to Howard Croxton on 11/17/04 |
| 11/26/2004 | 10.0 | Affidavit of Carol Wilkinson, Process Server re: Service for defendant Thomas G Robbins accepted by Eleanor C Sinnott, Chief Legal Counsel on 11/22/04 |
| 11/30/2004 | 1.0 | Certified copy of petition for removal to U. S. Dist. Court of Deft. Massachusetts Port Authority U. S. Dist.#(04-12513GAO). |
| 11/30/2004 | | Case REMOVED this date to US District Court of Massachusetts |

**EVENTS**

I HEREBY ATTEST AND CERTIFY ON

_Dec. 1, 2004_ THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _[signature]_
Asst. Clerk

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                      SUPERIOR COURT DEPARTMENT
                                                  OF THE TRIAL COURT

| | |
|---|---|
| KING DOWNING,<br>    Plaintiff,<br><br>v.<br><br>MASSACHUSETTS PORT AUTHORITY; THE MASSACHUSETTS DEPARTMENT OF STATE POLICE, STATE POLICE TROOPER THOMPSON, STATE POLICE SERGEANT CROXTON, THOMAS G. ROBBINS, and PETER J. DIDOMENICA,<br>    Defendants. | Civil Action No. 04-4948-E |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Introductory Statement

1.   This is a civil rights action in which the plaintiff, King Downing, is seeking a declaratory judgment and monetary damages from the Massachusetts Port Authority, the Massachusetts Department of State Police, and individual State Police troopers for violation of his right to be free from unreasonable search and seizure. In October 2003, Downing was unlawfully detained by State Police troopers at Logan International Airport ("Logan") and required, under threat of arrest and prosecution, to produce identification and travel documents. The plaintiff alleges that his unlawful stop, questioning, arrest and temporary detention was carried out pursuant to the policy and practice of the Massachusetts Port Authority and the Massachusetts State Police directing law enforcement officials at Logan to question and remove from the airport persons who meet particular "behavioral" profiles notwithstanding the absence of reasonable suspicion to believe the person engaged in any wrongdoing.

Parties

2. Plaintiff King Downing ("Downing") is a citizen of the United States and a resident of New Jersey.

3. Defendant Massachusetts Port Authority ("Massport") is an independent Massachusetts corporation with its principal offices at One Harborside Drive, Suite 200S, East Boston, Suffolk County, Massachusetts. Massport is responsible for providing security at Logan, and does so, among other ways, under a contract with the Massachusetts Department of State Police.

4. Defendant Massachusetts Department of State Police (the "Massachusetts State Police" or "State Police") is an agency of the Commonwealth which, under the terms of a contract with defendant Massport, provides police and security services at Logan.

5. Defendant Thomas G. Robbins ("Robbins") is the Superintendent of the Massachusetts Department of State Police and, as such, is responsible for the training of all State Police troopers and for providing police and security services at Logan. At all times relevant to this Complaint prior to his appointment as Superintendent of the Massachusetts State Police, Robbins was a Major in the State Police with responsibility for training State Police troopers.

6. Defendant Paul J. DiDomenica ("DiDomenica") is a Sergeant in the Massachusetts State Police, who at the times relevant to this Complaint was an officer of the State Police and, on information and belief, was the author of the policy used to train law enforcement officers at Logan and was the training officer responsible for training the State Police at Logan.

7. Defendant Thompson ("Thompson") is a Massachusetts State Police Trooper, who at the times relevant to this Complaint was assigned to the Massachusetts State Police Troop at Logan.

8. Defendant Croxton ("Croxton") is a Sergeant in the Massachusetts State Police, who at the times relevant to this Complaint was assigned to the Massachusetts State Police Troop at Logan.

## Jurisdiction

9. This action is brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act, G.L. c. 12, § 11I. This court has subject matter and personal jurisdiction over this case and these parties pursuant to G.L. c. 212, § 4, G.L. c. 223A, § 2, and G.L. c. 231A, § 1.

## Facts

10. On November 15, 2002, Massport announced that it had trained State Police troopers responsible for security at Logan to "determine hostile intent by observing and interviewing passengers and others in the airport's terminals, curbs, roads and parking garages." This so-called "behavior pattern recognition program," which is separate and distinct from the screening and search of passengers boarding aircraft at Logan, called for the selective stop and questioning of persons anywhere on property controlled by Massport.

11. In addition to the training that Massport provided, the State Police, Robbins and DiDomenica devised and implemented a similar training program for State Police troopers using "behavior assessment" for the purpose of determining whether to stop and question persons at Logan and other locations.

12. Plaintiff is informed and believes that the Massport and the State Police behavioral assessment training has been provided to all State Police troopers assigned to Logan, including Thompson and Croxton, and was being used by those troopers in October 2003.

13. Plaintiff is informed and believes that the behavior assessment screening system training provided by Massport, the State Police, Robbins and DiDomenica: (a) directs or authorizes State Police troopers to stop, question and/or arrest certain individuals at Logan despite the absence of reasonable suspicion to believe that the individuals were committing, had committed or were about to commit any crime; (b) authorizes State Police officers to deny access to Logan to any person who refuses to cooperate with police requests for identification or other information; and (c) effectively condones and encourages racial and ethnic profiling.

14. Downing is the National Coordinator of the American Civil Liberties Union's Campaign Against Racial Profiling. His work for the American Civil Liberties Union ("ACLU") requires that he frequently travel to and from Boston by air. Downing is an African–American.

15. On the morning of October 16, 2003, Downing arrived at Logan on an Alaska Airlines overnight flight from the west coast. He was sporting a short beard, and had with him a brief case and a carry-on, which had been strapped to a portable luggage carrier. He was wearing casual slacks, a button-down striped shirt with a narrow collar, and his shirt was worn loose over his pants.

16. After deplaning in Boston, Downing left the gate area and stopped to make a phone call from a public telephone on the upper level of the terminal near the airport exit. While he was on the phone, Downing noticed that Thompson, who was wearing a Massachusetts State Police uniform, had approached him and was standing only a few feet away, close enough to overhear any conversation Downing might be having on the telephone. Downing noticed that

4

Thompson had no reason to be in the position he was only a few feet away from Downing other than to observe or speak with Downing.

17. When Downing completed his phone call, Thompson demanded that Downing produce identification. Although Downing did not believe that he was free to leave without responding to Thompson's demands, he respectfully declined to produce any identification without receiving an explanation of why he was being stopped. Thompson refused to provide any explanation, and said that if Downing was not going to produce identification he would have to leave the airport. Although suspicious that Thompson had singled him out based on considerations of race, Downing agreed to leave the airport to avoid further delay, humiliation and confrontation.

18. At the time that he was stopped by Thompson, Downing was in an area of the terminal which was generally accessible to the public. He was neither boarding nor attempting to board an aircraft. Thompson did not have a a reasonable suspicion that Downing had committed, was committing or was about to commit a crime and had no other lawful basis to stop or detain him or to require him to produce identification as a condition of remaining in the terminal.

19. Downing left the airport terminal on the upper level and attempted to locate a taxi. Moments later, Thompson followed Downing from the terminal and again demanded that Downing show him some identification, adding that if he did not produce it he would be "going downtown." Downing specifically asked Thompson if he (Downing) was under arrest. Thompson told Downing that he was under arrest and no longer free to leave. Thompson refused to tell Downing why he was under arrest. Thompson appeared agitated and upset that Downing

5

was not agreeing to hand over his identification documents. In Downing's presence, Thompson used his radio to request assistance.

20. Other than asking him for identification, prior to detaining Downing Thompson did not ask Downing any questions about his flight plans, the reason he was at the airport, on what flight he had arrived, or any other questions designed to dispel any suspicion that Thompson may have had about Downing's presence at the airport.

21. Five or more minutes later, three Massachusetts State Police troopers, including Croxton, joined Thompson in the area in front of the terminal. After speaking with Thompson separately, Croxton informed Downing that he was being asked for identification because Thompson had concluded that he had been behaving suspiciously. Croxton, however, could not describe any of Downing's allegedly suspicious behavior, and gave Downing the impression that he had not asked Thompson. Croxton also refused to ask Thompson what it was about Downing that had aroused suspicion, stating to the effect that if his subordinate tells him he has suspicion "it is good enough for him." During this exchange, and from the time they arrived on the scene, the two other State Police officers were positioned near Downing to make sure he could not leave.

22. Fearing that he really was going to be handcuffed and taken to a police lockup, and wishing to avoid further delay and harassment, Downing produced his driver's license. Thompson took the license and brought it to a State Police cruiser, where he appeared to make a radio call. Two other troopers remained with Downing to prevent him from leaving. After some time, Downing's driver's license was returned to him. Croxton, however, then informed Downing that he would also need to inspect his airline ticket. When Downing refused, Croxton told him that, if he did not produce his airline ticket, he would be placed on Logan Airport's

6

"trespass list" and his ability to return to the airport without a ticket would result in arrest. Again fearing he would in fact suffer the threatened consequences, Downing produced his airline ticket. All four police officers looked at Downing's ticket to determine if it was a valid ticket. When Downing's airline ticket was finally returned, Downing was permitted to leave the airport.

23. By stopping the plaintiff for purposes of questioning and inspection of his identification papers and plane ticket, and by informing him that he was under arrest and not free to leave, defendants Thompson and Croxton effected a seizure of the plaintiff's person. By requiring Downing to produce identification papers and travel documents under threat of arrest or denial of access to the facilities of Logan Airport, defendants conducted a search of Downing's effects. The actions of Thompson and Croxton, as described in this Complaint, were taken without probable cause or reasonable suspicion that Downing was engaged in any way in any unlawful activity.

24. The unlawful actions of Thompson and Croxton, as herein described, were taken in their individual capacities or, in the alternative, were proximately caused by, or taken pursuant to, the directions of Massport and the State Police, particularly the behavioral assessment policy adopted, authored and promulgated by Massport, the State Police, Robbins and DiDomenica.

25. On information and belief, the behavior assessment screening system authorizes or directs law enforcement officers at Logan to stop and question "suspicious persons" on the basis of less justification than reasonable suspicion, to use race and ethnicity as a factor in identifying "suspicious persons," and to use a person's assertion of his constitutional right to question the stop, or not to cooperate or produce documents to law enforcement, as a basis for further detention and interrogation.

7

26. As a proximate result of the actions of the defendants in stopping the plaintiff absent any reasonable suspicion or criminal activity, detaining him against his will and forcing him to provide the police with identification and travel documents, the plaintiff was deprived of his right to be secure in his person and property, and suffered public humiliation, embarrassment and delay.

## COUNT I
### (Mass. Gen. Law. c. 12 § 11I)

27. Downing repeats and realleges the allegations set forth in paragraphs 1 through 26 as if fully set forth herein.

28. These actions of Massport, Thompson, Croxton, Robbins and DiDomenica, as herein described, deprived or threatened to deprive Downing by threats, intimidation and coercion of rights secured by Articles 1 and 14 of the Massachusetts Declaration of Rights, and the Fourth and Fourteenth Amendments to the United States Constitution.

29. As a proximate result of these actions, Downing has suffered damages in an amount to be determined at trial.

## COUNT II
### (42 U.S.C. § 1983)

30. Downing repeats and realleges the allegations contained in paragraphs 1 through 26 above as if fully set forth herein.

31. The actions of the defendants as herein described were taken under color of state law within the meaning of 42 U.S.C. § 1983.

32. The actions of Thompson and Croxton in stopping Downing absent any reasonable suspicion of criminal activity, detaining him against his will, and forcing him to provide them with identification and travel documents, deprived Downing of his right to be

secure in his person and property in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

33.     The actions of Massport, Robbins and DiDomenica in adopting and implementing the behavioral assessment policy and in training Thompson and Croxton to stop and question individuals without reasonable suspicion, and to compel disclosure of identification papers and travel documents under threat of arrest or exclusion from Logan, resulted in the unconstitutional search and seizure of Downing and deprived him of his right to be secure in his person and property in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

34.     As a proximate result of these actions, Downing has suffered damages in an amount to be determined at trial.

## COUNT III
(Declaratory Relief)

35.     Downing repeats and realleges the allegations contained in paragraphs 1 through 26 above as if fully set forth herein.

36.     Massport and the State Police are continuing to use the behavior assessment screening system described more fully in paragraphs 10-13 and 24-25 above, either directly or under the name Screening of Passengers by Observation Techniques ("SPOT") program, as the basis for the search and seizure of any person at Logan. On information and belief, Thompson, Croxton, Robbins and DiDomenica are continuing to use, or to train others to use, the behavior assessment screening system described more fully in paragraphs 10-13 and 24-25 above as part of the SPOT program for the search and seizure of any person at Logan.

37.     Downing continues to travel, and intends to travel, into and out of Boston through Logan under circumstances which are similar or identical to those which led to his being stopped

9

by the defendants on October 16, 2003, and is therefore subject to repeated search and seizure or, in the alternative, denial of access to Logan.

38.     There exists an actual controversy, within the meaning of G.L. c. 231A, § 1, regarding the constitutionality of the behavior assessment screening system described above, both on its face and as applied, under Articles 1 and 14 of the Massachusetts Declaration of Rights and under the Fourth and Fourteenth Amendments to the United States Constitution.

## PRAYERS FOR RELIEF

WHEREFORE, plaintiff Downing respectfully requests that this Court:

a.      Enter judgment for monetary damages, including prejudgment interest, against defendants Massport, Robbins, DiDomenica, Croxton and Thompson;

b.      Declare that the behavior assessment screening system employed by Massport and the State Police at Logan is unconstitutional on its face and as applied under Articles 1 and 14 of the Massachusetts Declaration of Rights and under the Fourth and Fourteenth Amendments to the United States Constitution;

c.      Award Downing his reasonable attorneys' fees and other legal costs and expenses; and

d.      Award Downing such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff King Downing hereby demands a trial by jury as to all issues so triable.

KING DOWNING
By his attorneys,

Dated: November 10, 2004

*Peter B. Krupp*
BBO #548112
Lurie & Krupp, LLP
One McKinley Square
Boston, MA  02109
Tel:  (617) 367-1970

*John Reinstein by: PBK*
John Reinstein
BBO # 416120
American Civil Liberties Union of Massachusetts
99 Chauncy Street, Suite 310
Boston, MA 02111
Te:  (617) 482-3170

I HEREBY ATTEST AND CERTIFY ON
DEC. 1, 2004, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
ASSISTANT CLERK.

11