UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                          )
KING DOWNING,                                             )
     Plaintiff,                                           )
                                                          )
     v.                                                   )    Civil Action No. 04-12513-RBC
                                                          )
MASSACHUSETTS PORT AUTHORITY; THE                         )
MASSACHUSETTS DEPARTMENT OF STATE                         )
POLICE, STATE POLICE TROOPER                              )
THOMPSON, STATE POLICE SERGEANT                           )
CROXTON, THOMAS G. ROBBINS, and                           )
PETER J. DIDOMENICA,                                      )
     Defendants.                                          )
_____)

**PLAINTIFF'S REPLY TO THE STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA AND THE OPPOSITION OF THE MASSACHUSETTS PORT AUTHORITY TO PLAINTIFF'S MOTION TO COMPEL**

     This is a civil rights action in which the plaintiff, King Downing, is seeking a declaratory judgment and monetary damages from the Massachusetts Port Authority, the Massachusetts Department of State Police, and individual State Police troopers for violation of his right to be free from unreasonable search and seizure.  In October 2003, Downing was unlawfully detained by State Police troopers at Logan International Airport ("Logan") and required, under threat of arrest and prosecution, to produce identification and travel documents.  The plaintiff alleges that his unlawful stop, questioning, arrest and temporary detention was carried out pursuant to the policy and practice of the Massachusetts Port Authority and the Massachusetts State Police directing law enforcement officials at Logan to question and remove from the airport persons who meet particular "behavioral" profiles notwithstanding the absence of reasonable suspicion to believe the person engaged in any wrongdoing.

In November 2004, the plaintiff served a request for production of documents on Massport and the State Police seeking, among other things, records concerning the use of behavioral assessment as a basis for the detention of the persons at the airport and the training in this technique provided to State Police troopers.  Defendants objected to the request on the ground that the documents <u>may</u> contain Sensitive Security Information ("SSI") within the meaning of 49 C.F.R. § 1520 *et seq.*  and declined to produce the documents pending review by the Transportation Security Administration ("TSA").   A timely request for review of the documents was made to TSA, but no determination has yet been made by that agency.    As the information contained in those documents is central to the proof of the plaintiff's claims, there has been no further discovery.

In the absence of a determination within a reasonable period that the documents contain SSI, the plaintiff filed a motion to compel their production.  Massport opposed the motion on the grounds that the determination by Massport and its counsel that the information sought by plaintiff was SSI was binding in the absence of the determination by TSA to the contrary and that disclosure in the context of the civil litigation was barred by TSA regulation.

On the eve of the hearing on plaintiff's motion to compel, the United States Department of Justice filed a statement of interest by the United States of America under 28 U.S.C. § 517. The statement, which was supported by the declaration of Robert D. Jamison, Deputy Administrator of TSA, asserted that TSA "has made a preliminary determination that the documents contain SSI" and that a final determination will be issued "shortly,"   Jamison Declaration, ¶ 14, and argued that (a) that SSI cannot be released to plaintiff or his counsel and (b) that this court lacks jurisdiction to review TSA's determination or to compel production of SSI.

SSI is principally a creation of TSA regulations promulgated under the general authority conferred by 49 U.S.C. §§ 114(s).  The statute requires that regulations be prescribed "prohibiting the disclosure of information obtained or developed in carrying out security under authority of the Aviation and Transportation Security Act" . . .  if the Under Secretary decides that the disclosure would be detrimental to the security of transportation . [1]  The information is not classified pursuant to executive order, nor is access to SSI limited to persons with an appropriate security clearance.  Similarly, the information does not fall within the state secrets privilege.

The TSA regulations contain an extensive list of information which has been categorically determined to be SSI, 49 C.F.R. § 1520.5(b), including "information regarding security screening programs," 49 C.F.R. § 1520.5(b)(9), as well a catch all provision allowing the designation as SSI "information not otherwise [described in the regulation] that TSA determines to be SSI under § 114(s)."   The regulations also denominate the persons covered, § 1520.7, including airport operators, aircraft operators, transportation industry unions, and all employees of such entities as well as persons with a defined "need to know." §§ 1520.7(j) and 1520.11.  Attorneys in litigation with such entities are not specifically designated as having a need to know although it was previously the practice of the FAA to permit air carrier counsel

---

[1]  § 114(s) provides in relevant part that:
(1) In general.   Notwithstanding section 552 of title 5 [the Freedom of Information Act], the Under Secretary shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security under authority of the Aviation and Transportation Security Act (Public Law 107-71) or under Chapter 449 of this title if the Under Secretary decides that disclosing the information would– . . . (C) be detrimental to the security of transportation.

– 4 –

engaged in litigation to provide opposing counsel with SSI subject to an "attorneys' eyes only" protective order   Jamison Declaration, ¶ 9.   This practice is no longer observed as TSA now adheres to an unwritten policy of refusing to authorize disclosure to counsel other than counsel for covered parties.

1.    **The Government and Massport substantially Overstates the Scope of the Statutory Authorization for TSA's Regulatory Authority.**

The plain language of § 114(s) suggests a very limited purpose – to exempt certain transportation-related information held by the Department of Transportation from disclosure to the public under the Freedom of Information Act.  The Statement of Interest, however, takes a broad view of the statute, arguing that "federal law bars Massport from providing the unredacted information to plaintiff or plaintiff's counsel."  Statement of Interest at 7.   This is an extraordinary proposition which, if supported by the language of the statute, would raise profound First Amendment and due process concerns.  Stripped of the veneer of certainty that colors the Statement, the government take the position that TSA may prohibit a private party from disclosing information in its possession which falls within the regulation's broad definition of  SSI – without regard to whether that information was received from TSA or any other confidential source.  A reading of the statutory language, however, shows that it does not address, much less authorize, the exercise of sweeping authority over vast amounts of information held by other agencies, by state officials and by private parties.   Rather, it is limited in the first instance to public disclosure by the agency and is further limited to that information which the agency has "obtained or developed" in connection with it responsibilities for air transportation security.

2.      **Section 114(s) Does Not Bar Disclosure of SSI in Civil Discovery**.

Apart from the fact that it rests entirely on the yet to be established proposition that the material sought by plaintiff is SSI, the flaw in the government's position is that it fails to address the very issue raised by its submission: assuming that TSA appropriately determines the information is SSI, does the enabling legislation in any way restrict the authority of the federal courts to order production of clearly relevant SSI in civil discovery under a protective order.

Even if § 114(s) may be more broadly read to authorize prohibition of disclosure of information not held by TSA, it certainly does not authorize the sweeping restriction of discovery in civil litigation for which the government and Massport argue here, and the power to limit judicial control over such information is neither inherent nor implicit in the statute. [2]

What Massport and the Department of Justice effectively argue is that §114(s), by implication, creates an absolute privilege for SSI in civil litigation. Privileges, however, should not readily be recognized under such circumstances. See *United States v. Nixon*, 418 U.S. 683, 710 (1974)(evidentiary privileges "are not lightly created"); *Cox v. Miller*, 296 F.3d 89, 107 (2d Cir. 2002)("Because claims of privilege derogate from the public's right to every person's evidence, they must be strictly construed and accepted only to the very limited extend that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means of ascertaining truth").

---

[2] Massport argues additionally that the absence of express Congressional authorization for disclosure of SSI in civil discovery should be dispositive of the plaintiff's claims. This adds nothing to the consideration of the issue. An agency may not assert powers under statutory authority simply because Congress has not "expressly negate[d] the existence of a claimed administrative power." *Railway Labor Executive Ass'n v. National Mediation Board*, 29 F.3d 655, 671 (D.C. Cir. 1994).

Moreover, when Congress has created discovery privileges it has done so explicitly.  See, e.g., *Pierce County v. Guillen*, 537 U.S. 129, 135-136 (2003)(discussing provision of 23 U.S.C. § 409 that information "shall not be subject to discovery or admitted into evidence in a Federal or stae court proceeding"); see also 14 U.S.C. 645(c)(1) and (h)(2); 10 U.S.C. 1102(b) and (d)(2) (medical quality assurance records "are not subject to discovery"); 12 U.S.C. 1828(t)(2)(same); 15  U.S.C. §§ 78o(b)(2)(F), (d)(3)(F) and (f)(6)(information contained in required filings by securities dealers).

There is, moreover, no reason to believe that Congress intended to remove information identified under § 114(s) from the supervision of the courts.  Indeed, Congress allows much more sensitive information to be managed by the courts and disclosed under judicial supervisions.  See, e.g., *United States v. Belfield* , 692 F.2d 141, 148 ((D.C. Cir. 1982)(disclosure of information collected under the Foreign Intelligence Surveillance Act); *United States v. Duggan*, 743 F.2d 59, 78 (2d Cir. 1984)(FISA information disclosed under appropriate protective procedures); *United States v. Lindh*, 198 F.Supp.2d 739, 742 (E.D. Va. 2002)(protective order restricting disclosure of investigation methods and information obtained from detainees) And the very type of information at issue here has in the past been used in the federal courts under appropriate safeguards.  See, e.g., *Ospina v. Trans World Airlines*, 975 F.2d 35, 36 (2d Cir 1992)(portions of trial closed when airline security information was disclosed).

**Conclusion**

For the foregoing reasons, the court should

1.     Order the defendants, within a period of two weeks, to provide counsel for the

plaintiffs with all documents or information which has not been specifically

determined by TSA to be SSI;

2.    Require the defendants to provide for the court for in camera review any

documents or information determined by TSA to be SSI;

3.    Order the defendants to provide counsel for the plaintiff with any documents or

information which, after review, the court determines were not obtained or

developed by TSA; and

4.    Order the defendants to provide counsel for the plaintiff with any remaining

documents or information subject an attorneys' eyes only protective order

approved by the court.


KING DOWNING
By his attorneys,


_____/s/ Peter B. Krupp_____
Peter B. Krupp
   BBO #548112
Lurie & Krupp, LLP
One McKinley Square
Boston, MA  02109
Tel:  (617) 367-1970


_____/s/ John Reinstein_____
John Reinstein
   BBO # 416120
American Civil Liberties Union of Massachusetts
99 Chauncy Street, Suite 310
Boston, MA 02111
Te:  (617) 482-3170


March 9, 2006