UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KING DOWNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MASSACHUSETTS PORT AUTHORITY, THE MASSACHUSETTS DEPARTMENT OF STATE POLICE, STATE POLICE TROOPER THOMPSON, STATE POLICE SERGEANT CROXTON, THOMAS G. ROBBINS, and PETER J. DIDOMENICA, | ) ) ) ) ) ) ) | Civil Action No. 04-12513-RBC |
| | ) | |
| Defendants. | ) | |

**DEFENDANT MASSACHUSETTS PORT AUTHORITY'S
STATEMENT OF UNDISPUTED FACTS**

Pursuant to Local Rule 56.1, Defendant Massachusetts Port Authority ("Massport") provides this statement of undisputed facts in support of its Motion For Summary Judgment.

1. Plaintiff King Downing is a lawyer and currently serves as the National Coordinator of the American Civil Liberties Union's Campaign Against Racial Profiling. Compl. ¶ 14; *see, e.g.*, Downing Dep. 6:4-5, Sept. 18, 2006, hereinafter Ex. A.[1]

2. In his role as National Coordinator for the Campaign Against Racial Profiling, he is charged with raising "awareness about the existence of racial profiling through public education, media outreach, know-your-rights training, public service announcements," and assisting ACLU affiliates around the country. Ex. A at 11:1-7.

3. Downing is African-American. Compl. ¶ 14.

---

[1] All citations to Exhibits contained in this Statement of Undisputed Facts reference the Exhibits attached to the Tenn Affidavit In Support of Defendant Massachusetts Port Authority's Motion For Summary Judgment. *See* L.R. 56.1.

4. On the morning of October 16, 2003, Downing arrived at Logan Airport on a red-eye flight from the West Coast. *Id*. ¶ 15.

5. He flew to Boston to attend a meeting related to a racial-profiling working group that was scheduled to begin at 10:00 a.m. that morning at the Roxbury Defender's Officer. Ex. A at 13:4-7, 14:9-11, 14-23, 44:6-9.

6. After deplaning, Downing used a public payphone located outside of the secure gate area of Terminal B to retrieve his voicemail messages. Compl. ¶ 16; Ex. A at 18:3-22.

7. State Police Trooper William Thompson was on duty at Logan Airport at the time Downing's flight arrived. *See* Thompson Dep. 43:14-17, June 22, 2006, hereinafter Ex. B.

8. In his duties at Logan Airport, Trooper Thompson is charged with dealing with irate passengers and travelers. *See id*. at 42:8-15, 42:23-43:3.

9. Trooper Thompson is African-American. Ex. A at 28:20-22.

10. While Downing was on the payphone, Trooper Thompson was approximately five feet away from him, observing the security checkpoint leading into the gate area of the terminal. *Id*. at 19:1-20:14; Ex. B at 50:7-8, 51:13-16.

11. The first encounter between Downing and Trooper Thompson occurred while Downing was making or completing his call. *See* Compl. ¶¶ 16-17.

12. Before any words were exchanged between the men, Downing turned to look at Trooper Thompson. Ex. A at 112:2-19.

13. Purportedly in response to Downing's look, Trooper Thompson asked Downing, "Is there a problem?" Ex. A at 112:10-11.

14. In answer, Downing told Trooper Thompson: "I just want to know why you're standing here so close to me while I'm talking on the phone." *Id*. at 22:19-21; *see* Ex. B at 50:5-

6, 10-11, 51:20-22.  Trooper Thompson then asked Downing for his identification.  Ex. A at 23:6-7, 25:3-12.

15. Downing subsequently refused to provide any information to Trooper Thompson concerning why he was in the airport that morning.  Ex. B at 52:15-19, 53:5-8, 55:2-19.

16. Downing also refused to provide any identification to Trooper Thompson, saying: "Why do I have to show you ID?" and "I'm not showing you my ID."  Ex. A at 23:14-16.

17. As a result of these comments, Trooper Thompson considered Downing to be condescending and confrontational.  Ex. B at 52:9-19, 66:16-23.  He also considered him to be irate.  *Id*. at 93:13-21.

18. At some point during the exchange, Trooper Thompson told Downing that if he would not provide information, he would have to leave the airport.  Compl. ¶ 17; Ex. A at 25:3-13, 117:8-13; Ex. B at 54:23-55:23.

19. Downing then agreed to leave the airport, hung up the telephone, and walked away towards the exit.  Ex. A at 23:20-24, 25:8-18; *see* Compl. ¶ 19.  He walked away because he wanted to terminate the conversation with Trooper Thompson.  Ex. A at 24:19-23.

20. After refusing to provide any information to Trooper Thompson, Downing exited the terminal and proceeded to attempt to hail a cab while on the upper level of the terminal. Compl. ¶¶ 17, 19; Ex. A at 25:19-26:2, 117:14-16.  He walked up the sidewalk a few times in an effort to obtain a taxi.  *See* Ex. A at 25:20-26:3.

21. Cabs, however, are not authorized to pick-up passengers at the upper level of the airport terminal.  *See, e.g.*, *id*. at 117:17-19.

22. The second interaction between Downing and Trooper Thompson occurred on the sidewalk outside of the upper level of the airport terminal, where Plaintiff Downing had gone to locate a cab. Compl. ¶ 19; *see* Ex. B at 56:13-57:5.

23. Trooper Thompson followed Downing outside and radioed for back-up. Compl. ¶ 19; Ex. A at 27:17-23. In response, four officers arrived. Ex. A at 28:3-7.[2]

24. State Police Trooper Howard Croxton arrived. Compl. ¶ 21; Ex. A at 32:6-11; Ex. B at 61:16-18.

25. Trooper Croxton is African-American. *See* Ex. A at 28:16-19.

26. State Police Trooper Wanza Adell also arrived. *See id.* at 32:12-14.

27. Trooper Adell is African-American. *See id.* at 28:16-19.

28. Trooper Robert Moore also arrived. *See id.* at 32:12-14.

29. He, too, is African-American. *See id.* at 28:16-19.

30. State Police Sergeant Mark Kiley arrived as well. *Id.* at 28:5-29:2; Ex. B at 61:17-20.

31. Sergeant Kiley is white. *See* Ex. A at 28:16-29:2.

32. Downing subsequently produced his license to Sergeant Kiley because he wanted to leave, so that he would not miss his meeting. *See id.* at 29:24-30:4, 8-9, 30:20-31:1, 34:8-10.

33. After Downing produced the license, Trooper Thompson radioed it in so that it could be checked against the trespass list and then returned the license to Downing. *Id.* at 31:11-23; Ex. B at 72:2-18, 82:19-83:18.

34. Downing then gathered his things to leave. Ex. A at 35:11-12.

---

[2] Although Plaintiff Downing describes a conversation between the men, Trooper Thompson testified that he did not say anything to Plaintiff Downing when they were outside on the sidewalk. *See* Ex. B at 57:15-16, 63:14-16.

35. Downing was also asked to produce his airline ticket for inspection by one of the officers. *Id*. at 35:14-17.

36. He initially refused to produce his travel documents, saying: "You asked me to show identification. I've shown identification. Now you're asking for my tickets. I'm not going to show you my tickets." *Id*. at 35:7-23.

37. Concerned about the timing of his meeting, Downing subsequently provided his boarding pass to the officers. *Id*. at 37:15-38:2, 16-18; 43:7-10.

38. Once checked, the travel documents were returned to Downing. *Id*. at 37:15-38:2, 41:11-21; *see* Compl. ¶ 22.

39. Downing then left the area, proceeded to the lower level of the airport, and took a cab from Logan Airport to his meeting. *See* Ex. A at 42:1-16.

40. Downing does not know whether the behavioral assessment screening system program (the "B.A.S.S. program") played any role in his interaction with the officers. *Id*. at 100:21-101:4, 102:6-9.

41. Downing does not know whether the B.A.S.S. program utilizes, condones, or encourages racial profiling. *Id*. at 100:15-20, 101:5-102:4, 10-13.

42. Downing does not know whether race generally played any role in his encounter with police. *Id*. at 139:22-140:7.

43. At no time during his interaction with police was Downing physically restrained in anyway, and at no time did any officer ever touch him. *Id*. at 93:20-94:1.

44. During his encounters with police, Downing was never handcuffed, *id*. at 126:4-6, nor was he ever placed in a police cruiser, *id*. at 94:5-7.

45. The entire interaction between Downing and the police occurred in and around Logan Airport. Compl. ¶¶ 16-19, 21-22.

46. At no time did the police ever instruct Downing to relocate to a different, more private area of the terminal. Ex. A at 94:8-14.

47. Plaintiff Downing refused to produce his identification to Trooper Thompson because he believed he has a constitutional right to refuse to provide it. *See id.* at 23:17-19.

Date:   March 1, 2007                Respectfully submitted,

                                     MASSACHUSETTS PORT AUTHORITY
                                     By its attorneys,


                                     /s/ Annmarie A. Tenn
                                     Roscoe Trimmier, Jr.  (BBO #502506)
                                     Annmarie A. Tenn (BBO #658789)
                                     Ropes & Gray LLP
                                     One International Place
                                     Boston, Massachusetts 02110
                                     (617) 951-7000
                                     roscoe.trimmier@ropesgray.com
                                     annmarie.tenn@ropesgray.com

**CERTIFICATE OF SERVICE**

In accordance with L.R. 5.2(b) and Section E.2 of the Electronic Case Filing Administrative Procedures of the United States District Court for the District of Massachusetts, I, Annmarie A. Tenn, hereby certify that on March 1, 2007, the within Statement Of Undisputed Facts filed through the ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing.

/s/ Annmarie A. Tenn
Annmarie A. Tenn