UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KING DOWNING, )<br>　　Plaintiff )<br> )<br>V. )<br> )<br>MASSACHUSETTS PORT AUTHORITY, )<br>THE MASSACHUSETTS DEPARTMENT )<br>OF STATE POLICE, STATE POLICE TROOPER )<br>THOMPSON, STATE POLICE SERGEANT )<br>CROXTON, THOMAS G. ROBBINS, and )<br>PETER J. DIDOMENICA, )<br>　　Defendants )<br> ) | C.A. No. 04-CV-12513-GAO |

### DEFENDANTS WILLIAM THOMPSON AND HOWARD CROXTON'S MOTION FOR SUMMARY JUDGMENT

Now come William Thompson and Howard Croxton, the Defendants in the above-entitled matter, and pursuant to Fed.R.Civ.P. 56., respectfully move for summary judgment on each and every count containing allegations against them. As grounds hereto, Defendants state that based on the undisputed material facts[1], Plaintiff cannot establish that the Defendants violated either his state or federal constitutional rights when they spoke with him at Logan Airport on October 16, 2003. Accordingly, Defendants are entitled to summary judgment as a matter of law on Counts I and II of Plaintiff's Complaint. In the alternative, Defendants state that they should be awarded summary judgment where they are qualifiedly immune from suit. Furthermore, Defendants are entitled to summary judgment on Count III of Plaintiff's Complaint wherein he seeks

---

[1] While Defendants steadfastly contest the allegations contained in Plaintiff's Complaint, for purposes of this motion only, Defendants adopt Plaintiff's version of the underlying incident as depicted in Defendants' Statement of Undisputed Material Facts.

declaratory relief where Plaintiff cannot meet his burden of proof that Defendants Thompson and Croxton created the behavioral assessment screening program, utilized it in their encounter with Plaintiff or that they otherwise were involved in actually formulating the program into an official policy of the Massachusetts State Police. In support of their Motion, Defendants have attached hereto a Memorandum of Law as well as their Statement of Undisputed Material Facts.

For the reasons set forth above and in the accompanying documents, Defendants respectfully request this Court grant their motion and award summary judgment in their favor.

DEFENDANTS REQUEST A HEARING ON THIS MOTION.

Respectfully submitted,
For Defendants William Thompson and
Howard Croxton,
By their attorneys,

RAFANELLI & KITTREDGE, P.C.


 /s/ Suzanne T. Caravaggio
Joseph P. Kittredge, BBO #548841
Suzanne T. Caravaggio, BBO #634175
One Keefe Road
Acton, MA 01720-5517
(978) 369-6001


**CERTIFICATE OF SERVICE**

I hereby certify that on this date this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants as of March 1, 2007.

Date: 03/01/07                              /s/ Suzanne T. Caravaggio
                                            Suzanne T. Caravaggio

3

## CERTIFICATE OF COMPLIANCE WITH L.R.7.1

      I, Suzanne T. Caravaggio, counsel for Defendants William Thompson and Howard Croxton, hereby state that I complied with the requirements of Local Rule 7.1 in that I have attempted to confer with Plaintiff's counsel in good faith to resolve or narrow the issues presented in this motion.


Date:  03/01/07　　　　　　　　　　　　　　_/s/_ Suzanne T. Caravaggio_____
　　　　　　　　　　　　　　　　　　　　　　Suzanne T. Caravaggio

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KING DOWNING,<br>    Plaintiff<br><br>V.<br><br>MASSACHUSETTS PORT AUTHORITY,<br>THE MASSACHUSETTS DEPARTMENT<br>OF STATE POLICE, STATE POLICE TROOPER<br>THOMPSON, STATE POLICE SERGEANT<br>CROXTON, THOMAS G. ROBBINS, and<br>PETER J. DIDOMENICA,<br>    Defendants | C.A. No. 04-CV-12513-GAO |

### DEFENDANTS WILLIAM THOMPSON AND HOWARD CROXTON'S STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

Pursuant to Local Rule 56.1, Defendants William Thompson and Howard Croxton submit this statement of undisputed material facts upon which summary judgment is sought.

### The Parties

1.  Plaintiff King Downing, whose full name is Lylburn King Attorney Downing, is a resident of New York City, New York. *Deposition of King Downing, (hereinafter "Downing Tr.")(attached hereto as "Exhibit A"), 5-6.*

2.  Plaintiff is an African-American male. *Complaint, ¶ 14 (attached hereto as "Exhibit B").*

---

[1] While Defendants steadfastly contest the allegations contained in Plaintiff's Complaint, for purposes of this motion <u>only</u>, Defendants adopt Plaintiff's version of the underlying incident as depicted herein.

3. Plaintiff has a law degree from Rutgers University and has been employed by the American Civil Liberties Union ("ACLU") as its National Coordinator for the Campaign Against Racial Profiling ("CARP") since 2001. *Downing Tr., 6, 10.*

4. Defendant William Thompson is employed by the Department of State Police for the Commonwealth of Massachusetts where he has been so employed since 1992. Prior to consolidation with the Massachusetts State Police in 1992, Defendant Thompson was employed as an officer with the Metropolitan Police Department since 1987. *Affidavit of William Thompson, (hereinafter "Thompson Aff.")(attached hereto as "Exhibit C"), ¶¶ 1-2.*

5. On October 16, 2003, Defendant Thompson held the rank of "Trooper" and was assigned to Troop F located at Logan International Airport in Boston. Trooper Thompson has been assigned to Troop F since October of 2001. *Thompson Aff., ¶ 3-4.*

6. Defendant Thompson is an African-American male. *Thompson Aff., ¶ 5.*

7. Defendant Howard Croxton is employed by the Department of State Police for the Commonwealth of Massachusetts where he has been so employed since 1992. Prior to consolidation with the Massachusetts State Police in 1992, Defendant Croxton was employed as an officer with the Capitol Police Department since 1973. *Affidavit of Howard Croxton, (hereinafter "Croxton Aff.")(attached hereto as "Exhibit D"),¶¶ 1-2 .*

8. On October 16, 2003, Defendant Croxton held the rank of "Trooper" and was assigned to Troop F located at Logan International Airport (hereinafter "Logan") in Boston. Trooper Croxton has been assigned to Troop F since September of 2001. *Croxton Aff., ¶¶ 3-4 .*

9. Defendant Croxton is an African-American male. *Croxton Aff., ¶ 5.*

**BASS/PASS Programs**

10.     The Massachusetts State Police constitute the only law enforcement authority on the state level present at Logan.  *Deposition of Peter DiDomenica, (hereinafter "DiDomenica Tr.")(attached hereto as "Exhibit E"), 19.*

11.     In general, Massachusetts State Police (hereinafter "MSP") officers assigned to Logan are responsible for ensuring that the airport operates in a safe and orderly manner, preventing thefts of baggage, preventing acts of violence, securing of the airfield and other secure areas, monitoring the perimeter of the airport from intrusion, responding to calls from the Transportation Security Administration ("TSA") for prohibited items and other disturbances occurring at checkpoints, responding  to aircraft with disruptive passengers and assisting Federal agencies.  *DiDomenica Tr., 19-20.*

12.     MSP officers are assigned in the terminal on both the secure and unsecured sides of the screening area.  *DiDomenica Tr., 21.*

13.     Following the terrorist attacks of September 11, 2001, Sergeant Peter DiDomenica of the MSP was asked by then Troop F Commander Thomas Robbins to train all the personnel assigned to Troop F in a behavioral assessment program designed to identify high-risk passengers.  The purpose of this specialized training was in order to prevent another terrorist attack like 9/11 from occurring.  *DiDomenica Tr., 14-15.*

14.     The training program Sergeant DiDomenica developed – and continues to develop – is called the Passenger Assessment Screening System ("PASS"), also known as the Behavior Assessment Screening System ("BASS").  *DiDomenica Tr., 28-29.*

15.     While all troopers assigned to Troop F were required to receive the PASS/BASS training, the MSP never implemented it as a state-wide program.  *DiDomenica Tr., 30-32.*

**Plaintiff's Initial Encounter with Trooper Thompson**

16. In connection with his duties as the National Coordinator for CARP, Plaintiff traveled to Boston approximately once per month from the beginning of 2003 through approximately June, 2006. *Downing Tr., 12-13.*

17. During that time period, the majority of Plaintiff's business in the Boston area was related to his participation in a working group of community members, law enforcement, and civil rights and civil liberties organizations relative to the Massachusetts Department of Public Safety's study of racial profiling. *Downing Tr., 13-14, 55.*

18. On October 16, 2003, Plaintiff arrived at Logan at approximately 7:00 a.m. for a scheduled 10:00 a.m. meeting in Boston related to the study working group. *Downing Tr., 14, 17-18.*

19. Upon arriving at Logan, Plaintiff exited the airplane and walked out of the secure area of Terminal B to a row of pay telephones. The area for arrivals is located on the second floor of Terminal B. *Downing Tr., 18, 20.*

20. While Plaintiff was on one of the pay telephones checking his voicemail messages with his office in New York City, he turned to his right and observed Defendant Thompson standing against the wall approximately five (5) feet from him with his arms folded in front of him. *Downing Tr., 18-22.*

21. At the time, Defendant Thompson was assigned to patrol at Terminal B and was watching the security checkpoint. *Transcript of William Thompson (hereinafter "Thompson Tr.")(attached hereto as "Exhibit F"), 92.*

4

22. After Plaintiff turned towards the officer, Defendant Thompson stated, "Is there a problem?" Plaintiff replied, "I just want to know why you're standing here so close to me while I'm talking on the telephone." *Downing Tr., 22-23.*

23. Plaintiff equates "talking on the phone" with "hav[ing] a phone in use" where he was checking his voicemail and not actually speaking with anyone on the telephone. *Downing Tr., 22-23.*

24. In response to Plaintiff's statement, Defendant Thompson requested to see Plaintiff's identification. After Plaintiff asked why he would have to show it to the trooper, Defendant Thompson again requested Plaintiff's identification. Plaintiff replied that he was not going to show him his identification, hung up the telephone and started walking away. *Downing Tr., 23-24.*

25. As Plaintiff started to walk away, Defendant Thompson approached him and asked to see Plaintiff's identification. Plaintiff again refused to provide the trooper with his identification to which Defendant Thompson replied, "If you don't show ID, you're going to have to leave the terminal." *Downing Tr., 24-25.*

26. Plaintiff then walked outside the upper level of Terminal B to try to hail a cab and leave the airport. *Downing Tr., 25-26.*

27. The outside portion of the upper level of Terminal B at Logan International Airport is for departing flights only. Those individuals wishing to leave the airport, i.e. those on arriving flights, cannot access transportation from that level. *Thompson Aff., ¶ 6.*

**Plaintiff's Later Encounter with Other Officers**

28. Defendant Thompson followed Plaintiff outside as he was concerned about Plaintiff's well-being due to Plaintiff's unusual and confrontational behavior. *Thompson Tr., 56-58, 65-68.*

29. After further discussion concerning Plaintiff's identification and his leaving the terminal, Plaintiff started to walk away and was told by Defendant Thompson that he could not leave. *Downing Tr., 27.*

30. Plaintiff asked if he was under arrest to which Defendant Thompson stated that he was. *Downing Tr., 27.*

31. At no point did Defendant Thompson have any physical contact with Plaintiff, place handcuffs on him or tell him why he purportedly was being arrested. *Thompson Aff., ¶ 8.*

32. Defendant Thompson then made a call on his portable hand-held radio for backup due to Plaintiff's irrational behavior. *Thompson Aff., ¶ 7.*

33. A white sergeant, later identified as Sergeant Mark Kiley, then arrived at their location along with three other Massachusetts State Police Officers. The three other officers present were Defendant Croxton, Trooper Robert Moore and Trooper Wanza Adell. *Downing Tr., 28-29, 32; Thompson Tr., 59-60.*

34. After first speaking with Defendant Thompson, Sergeant Kiley approached Plaintiff, telling him that Defendant Thompson had asked for his identification because he was acting suspiciously. *Downing Tr., 28-29.*

35. Sergeant Kiley then asked Plaintiff for his identification. In response to Sergeant Kiley's request, Plaintiff produced his driver's license. *Downing Tr., 29-31.*

36. Sergeant Kiley handed Plaintiff's driver's license to Defendant Thompson who radioed the information to dispatch to check whether Plaintiff had any warrants or was on the "No Trespass" list for Logan. *Downing Tr., 31; Thompson Tr., 72, 82-83.*

37. While at the scene, Defendant Croxton tried to explain to Plaintiff why Defendant Thompson had asked for Plaintiff's identification. Defendant Croxton did not ask Plaintiff any questions nor did he and Plaintiff engage in any further conversation. *Downing Tr., 132, 136; Deposition of Howard Croxton (hereinafter "Croxton Tr.")(attached hereto as "Exhibit G"), 36-37.*

38. Shortly thereafter, Defendant Croxton was called to Terminal E and left the scene. *Croxton Tr., 38-41.*

39. Defendant Thompson was informed by dispatch that it did not appear that there were any warrants for Plaintiff or that he was on the "No Trespass" list. *Thompson Tr., 83.*

40. After providing his identification, an unidentified officer asked Plaintiff to produce his airline tickets. *Downing Tr., 35.*

41. Plaintiff initially refused to show the officer his tickets but eventually turned them over. *Downing Tr., 35-36.*

42. After Plaintiff produced his airline tickets, the group of officers discussed whether Plaintiff would qualify as a trespasser where his ticket was dated October 15th and not October 16th. *Downing Tr., 37-38.*

43. Once it was learned that Plaintiff had been on a flight that originated in Seattle on October 15th but arrived at Logan on October 16th, an officer other than Defendant Thompson told Plaintiff he was free to go. *Downing Tr., 41; Thompson Tr., 83.*

44. Plaintiff then left Logan and went to his meeting in Boston. *Downing, Tr., 42, 44.*

45. At no point during any of his encounters with the Massachusetts State Police on October 16, 2003 was Plaintiff touched by either Defendant Thompson or any other trooper. *Downing Tr., 93.*

46. Likewise, none of the officers ever put Plaintiff in a police cruiser, moved him from the scene at the terminal, pushed him or stopped him from walking to leave the terminal. *Downing Tr., 93-95.*

47. Plaintiff learned through a press release approximately one year prior to October 16, 2003 of the behavioral assessment program to be used at Logan. *Downing Tr., 98.*

48. Plaintiff does not know whether the officers were utilizing the behavior assessment system when he was stopped at Logan. *Downing Tr., 100-101.*

49. While both Defendants Thompson and Croxton had been trained in behavior pattern recognition, neither trooper utilized it on October 16, 2003 with Plaintiff as they were on regular patrol and not part of the group of officers who were to patrol Logan utilizing the BASS/PASS program. *Thompson Tr., 41-42, 94; Croxton Tr., 53.*

50. Likewise, Defendants Thompson and Croxton did not consider Plaintiff's race in their interaction with him. *Thompson Tr., 94; Croxton Tr., 48.*

51. At all times during Defendant Thompson's interaction with Plaintiff, Plaintiff was free to leave. *Thompson Aff., 9.*

        Respectfully submitted,
        For Defendants William Thompson and
        Howard Croxton,
        By their attorneys,

        RAFANELLI & KITTREDGE, P.C.


        /s/ Suzanne T. Caravaggio
        Joseph P. Kittredge, BBO #548841
        Suzanne T. Caravaggio, BBO #634175
        One Keefe Road
        Acton, MA 01720-5517
        (978) 369-6001


**CERTIFICATE OF SERVICE**

    I hereby certify that on this date this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants as of March 1, 2007.

Date: 03/01/07         /s/ Suzanne T. Caravaggio
        Suzanne T. Caravaggio