## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KING DOWNING,<br><br>     Plaintiff,<br><br>v.<br><br>MASSACHUSETTS PORT AUTHORITY, THE MASSACHUSETTS DEPARTMENT OF STATE POLICE, STATE POLICE TROOPER THOMPSON, STATE POLICE SERGEANT CROXTON, THOMAS G. ROBBINS, and PETER J. DIDOMENICA,<br><br>     Defendants. | Civil Action No. 04-12513-RBC |

### DEFENDANT MASSACHUSETTS PORT AUTHORITY'S REPLY TO PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff, King Downing, does not identify any genuine issue of material fact that precludes granting Defendant Massachusetts Port Authority's Motion for Summary Judgment ("Massport's Motion").  Downing cannot satisfy his burden of producing *any* evidence – only mere speculation – that the BASS program was employed in this case.  That, alone, is sufficient to grant Massport's Motion, as its only purported role in this case is its alleged sponsorship of the BASS program.  Neither can Downing avoid summary judgment by asserting that genuine issues of material fact exist concerning whether his interaction with police constituted a *Terry* stop and whether he was seized under the Fourth Amendment.  These issues are disputed conclusions of law for the Court to resolve, not questions of fact.  The undisputed facts make clear that Downing was not seized.  But, even if a seizure occurred, the undisputed facts clearly demonstrate that reasonable, articulable suspicion existed to justify any stop of Downing.

I.   **PLAINTIFF HAS FAILED TO PRESENT ANY EVIDENCE SUPPORTING HIS ALLEGATION THAT THE BASS PROGRAM WAS USED**

Plaintiff claims that he was unconstitutionally seized as the result of a behavioral profiling program instituted by Massport and carried out by the State Police ("the BASS program").  *See generally* Pl.'s Compl.  To date, however, Plaintiff has failed to present *any* evidence that the BASS program was the impetus for, or utilized during, his interaction with police.  In fact, in his opposition papers, Plaintiff *admits* that he "*knows* that the BASS program did *not* play a role in his interactions with the police."  Pl.'s Response to Massport's Facts ¶ 39 (emphasis added).[1]  He further admits various paragraphs from Massport's Statement of Undisputed Facts that state that he "*does not know* whether the BASS program utilizes, condones, or encourages racial profiling," nor does he know "whether race generally played any role in his encounter with police."  *Id*. at ¶¶ 40-41 (emphasis added).

Plaintiff unsuccessfully attempts to overcome this evidentiary void by alleging – illogically – that, even though he knows the BASS program was not utilized, he *suspects* that it may have been used and "reasonably *believes* that the BASS program played a role in the way in which the police acted towards him."  *Id*. at ¶ 39 (emphasis added); *see also* Pl.'s Response to Officers' Facts ¶¶ 48, 50 ("Mr. Downing does not know, but he believes, that the officers were using the BASS program when he was stopped at Logan," . . . nor does he know "if his race was a consideration").  Downing further surmises that "*[t]o the extent the BASS program was used* in connection with [his] stop at Logan, [his] race *may well have played* a factor in the decision to observe, engage and seek identification and travel documents from [him].")  Pl.'s Response to

---

[1] Downing's Response to Massport's Statement of Undisputed Facts mistakenly responds to Massport's original Statement of Undisputed Facts, not the corrected version of Massport's Statement of Undisputed Facts posted to the docket the same day, March 1, 2007.  The differences are not material to the resolution of the pending motions.

Officers' Facts ¶ 50 (emphasis added).  Downing's mere speculation (which is contrary to his own admission) that the BASS program may have been used, however, is insufficient.  *See Ingram v. Brink's Inc.*, 414 F.3d 222, 228-29 (1st Cir. 2005) (holding that, once the moving party avers the absence of genuine issues of material fact, "the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation. . . . And summary judgment can be entered even where ambiguous, often murky concepts such as motive and intent are involved"); *see also Vives v. Fajardo*, 472 F.3d 19, 22 (1st Cir. 2007) (affirming grant of summary judgment where assertion of improper motivation was unsupported speculation).[2]  Likewise, Downing's assertion that he was asked to leave the airport after refusing to provide information to Trooper Thompson inside the terminal does not support Downing's conjecture that aspects of the BASS program were employed.  As Trooper Thompson testified during his deposition, when police cannot determine whether someone is legitimately present at the airport, it is standard procedure

---

[2] Downing's reliance on speculation about redacted information to suggest that the BASS program condones racial profiling or was used in this case cannot seriously be credited.  *See* Pl.'s Opp. at 3-4 (arguing that redacted materials produced to Plaintiff "strongly suggest that race and/or ethnicity" may be considered when applying the BASS program).  First, Downing concedes that other material provided to him contradicts his assertion that racial profiling is condoned: "[T]he BASS program materials acknowledge that 'racial profiling practices are contrary to the fundamental values of our nation and serve to disenfranchise whole segments of our population.'"  *Id*. at 3.  Second, conjecture alone cannot rebut Trooper DiDomenica's undisputed testimony that, in developing the BASS program, he adhered to constitutional requirements.  *See* DiDomenica Depo. at 22:13-24, 25:9-27:11, Jan. 4, 2007, hereinafter Ex. A.

Recent legislative amendments provide a mechanism by which Plaintiff may obtain access to the redacted material at issue through judicial relief.  *See* Department of Homeland Security Appropriations Act of 2007, 2006 H.R. 5441; Pub. L. No. 109-295, § 525(d) (Oct. 4, 2006) (enabling counsel to obtain "covered persons" status as defined in regulations prohibiting disclosure of sensitive security information), hereinafter Ex. B.  Rather than formally request to review those documents by demonstrating requisite need, Downing speculates about the contents of the redacted information, hoping his bald allegations will create an issue of disputed fact.  The speculation that the redacted material explicitly condones racial profiling is unfounded and Plaintiff's case will not be aided if a request for access is made.

– separate and apart from the BASS program – to request that the person leave critical infrastructure. *See* Thompson Depo. at 55:20-56:10, June 22, 2006, hereinafter Ex. C. Finally, Downing's speculation that BASS *may have been used during his encounter* with police does not support his allegation that the BASS program was the *very basis* for any alleged stop. Indeed, because Massport's only alleged connection to this lawsuit is its implementation of the BASS program, and Downing cannot satisfy his burden of proving that BASS prompted the stop – an essential element of his claim – summary judgment should be entered in Massport's favor.[3]

## II. DOWNING'S INTERACTION WITH POLICE DID NOT CONSTITUTE A VIOLATION OF THE FOURTH AMENDMENT

Downing's interaction with police did not rise to the level of a seizure. Although Downing alleges that a dispute exists concerning whether he was seized, his assertion is no more than a disputed conclusion of law as to which the relevant facts are undisputed.

The undisputed evidence confirms that during his first encounter with police, Downing was explicitly told that he would have to leave the airport. Pl.'s Response to Massport's Facts ¶ 7. Equally critical, the undisputed facts demonstrate that Downing then left the terminal. *Id*. at ¶¶ 18-19. Although Downing attempts to create a disputed issue of fact where none exists – by alleging that during the exchange he "reasonably felt from all of the attendant circumstances that he was not free to leave," Pl.'s Opp. at 9 – there can be no clearer evidence that Downing was not seized as a matter of law than his own actions in departing the terminal.

Downing's second interaction with police outside the terminal did not rise to the level of a seizure. Contrary to what Downing alleges, it is clear that he knew at all times that he was free to leave the airport. Indeed, he produced his license and his travel documents because, by his

---

[3] Massport, nonetheless, addresses the remaining issue of whether Downing was unconstitutionally seized, because his claims do not result in liability as to it or any of the other Defendants.

own admission, he wanted to leave the airport and attend his meeting. *See* Pl.'s Response to Massport's Facts ¶¶ 31, 36 (admitting that Downing produced his identification and travel documents because he did not want to miss his meeting).

Downing's post-deposition Affidavit is insufficient to create a disputed issue of material fact concerning whether he was seized. Whether any seizure occurred is an objective inquiry that examines whether under the circumstances a "reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (plurality opinion). Downing's subjective beliefs that he was not free to leave are irrelevant. Moreover, Downing – a civil rights lawyer who serves as the National Coordinator of the ACLU's Campaign Against Racial Profiling and who advises individuals about their rights when interacting with police – was even better positioned than the average person to know that he was free to leave. The circumstances here do not support Plaintiff's case.

Assuming this second interaction with police rose to the level of a seizure, it would nonetheless be constitutional, as reasonable, articulable suspicion existed to justify any seizure. *See Terry v. Ohio*, 392 U.S. 1, 2-22 (1968).[4] In the absence of a genuine dispute over material facts, "the issue of . . . reasonable articulable suspicion to justify [a stop] . . . is a question of law." *Thompson v. Reuting*, 968 F.2d 756, 759 (8th Cir. 1992) (finding no reasonable basis for a stop premised upon events unlike those presented here). The undisputed facts in this case, viewed most favorably to Downing, demonstrate that reasonable, articulable suspicion existed for any seizure of Downing outside the terminal. Downing was making a call on a public phone

---

[4] That Downing's initial interaction with Trooper Thompson did not constitute a seizure cannot seriously be challenged. It is axiomatic that a police officer can approach an individual and put questions to him without triggering Fourth Amendment Protections. *See, e.g.*, *United States v. Smith*, 423 F.3d 25, 28 (1st Cir. 2005); Pl.'s Opp. at 9 ("[C]onsensual encounters between individuals and law enforcement officials do not trigger Fourth Amendment concerns.").

(as to which there is no reasonable expectation of privacy).  *See* Pl.'s Response to Massport's Facts ¶ 6.  After turning to look at Trooper Thompson, Downing challenged his presence by asking, "I just want to know why you're standing here so close to me while I'm talking on the telephone." *Id*. at ¶ 13.  In response to Trooper Thompson's request for identification, Downing asked, "Why do I have to show you ID?" and stated, "I'm not showing you ID," – unusual responses in an airport, especially when Downing presumably had already shown his identification to board his flight to Boston.[5]  *See id*. ¶ 15.  Despite Downing's self-serving claim that he did not "act in an irritable, condescending, combative or confrontational way," Downing Aff. at ¶ 7, the very substance of his words constituted aggressive responses.  His actions, coupled with his departure from the terminal to an area where he could not hail a cab, *see* Pl.'s Response to Massport's Facts at ¶¶ 19-20, are sufficiently erratic and suspicious that it was reasonable for Trooper Thompson to stop him outside of the terminal.  That stop was reasonable in scope, as it was limited to the circumstances that justified it – trying to determine the purpose for Downing's presence at the airport.  *See Terry*, 392 U.S. at 19.  Because the encounter was reasonable at its inception and in its scope, no Fourth Amendment violation occurred.

Finally, even if Downing was seized at any point during his interaction with police, no constitutional violation occurred.  Whether a seizure offends notions of reasonableness – the touchstone of Fourth Amendment – is judged by balancing the intrusion on an individual's Fourth Amendment interests against its promotion of legitimate government interests.  *Vernonia School Dist. v. Acton*, 515 U.S. 646, 652-53 (1995).  In the wake of September 11th, Trooper Thompson's interaction with Downing was reasonable, given the interest in airport safety.

---

[5] While a refusal to show identification cannot constitute the sole ground for reasonable suspicion, the words chosen to so refuse may raise suspicion.  *See, e.g.*, *United States v. Gilliard*, 847 F.2d 21, 24 (1st Cir. 1988) (circumstances "are not to be dissected and viewed singly;  rather they must be considered as a whole" (quotation and citations omitted)).

Downing misconstrues Massport's reliance on *United States v. Doe, MacWade v. Kelly, and Cassidy v. Chertoff*. *See* Pl.'s Opp. at 13. Those cases are not offered to demonstrate that a seizure of Downing was, *per se*, reasonable; rather, they demonstrate that, where concerns about airport safety persist, especially after September 11th, airports and mass transit providers operate in a realm of heightened security. The criteria for determining whether interaction between an officer and a traveler in an airport is reasonable must be evaluated in that context. *See, e.g.*, *United States v. Hartwell*, 436 F.3d 174, 180-81 (3d Cir. 2006)*, cert. denied*, 127 S. Ct. 111 (upholding search of passenger in airport even though it was initiated "without individualized suspicion"); *United States v. Yang*, 286 F.3d 940, 944 n.1 (7th Cir. 2002) ("[T]he events of September 11, 2001, only emphasize the heightened need to conduct searches at this nation's international airports."); *United States v. Gabriel*, 405 F.Supp.2d 50, 61 n.14 (D. Me. 2005) ("The use of a commercial passenger aircraft as a weapon [on 9-11] resulted in a greater public tolerance for searches at domestic airports").

## CONCLUSION

For the reasons set forth above, as well as for the reasons set forth in Massport's previously-filed Memorandum of Law, Massport's Motion should be granted.

Date:   June 19, 2007                              Respectfully submitted,

                                                                    MASSACHUSETTS PORT AUTHORITY
                                                                    By its attorneys,

                                                                    /s/ Annmarie A. Tenn
                                                                    Roscoe Trimmier, Jr.  (BBO #502506)
                                                                    Annmarie A. Tenn (BBO #658789)
                                                                    Ropes & Gray LLP
                                                                    One International Place
                                                                    Boston, Massachusetts 02110
                                                                    (617) 951-7000
                                                                    roscoe.trimmier@ropesgray.com
                                                                    annmarie.tenn@ropesgray.com

## CERTIFICATE OF SERVICE

In accordance with L.R. 5.2(b) and Section E.2 of the Electronic Case Filing Administrative Procedures of the United States District Court for the District of Massachusetts, I, Annmarie A. Tenn, hereby certify that on June 19, 2007, the within Reply Brief filed through the ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing.

/s/ Annmarie A. Tenn
Annmarie A. Tenn