UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                            )
KING DOWNING,                               )
        Plaintiff,                          )
                                            )
v.                                          )   Civil Action No. 04-12513-GAO
                                            )   **(Leave to File Granted on 6/25/07)**
MASSPORT, MASSACHUSETTS STATE               )
POLICE, ET AL,                              )
        Defendants.                         )
_____)

# DEFENDANTS MASSACHUSETTS STATE POLICE, COLONEL THOMAS ROBBINS AND SERGEANT DIDOMENICA'S REPLY TO PLAINTIFF'S OPPOSITION TO THEIR MOTION FOR SUMMARY JUDGMENT[1]

DOWNING'S ADMISSION THAT THE BASS TOOL WAS NOT USED REQUIRES SUMMARY JUDGMENT FOR DEFENDANTS ROBBINS, DIDOMENCA AND THE MASSACHUSETTS STATE POLICE

In his response to Massport's Statement of Undisputed Facts Downing admits that he "knows that the BASS program did not play a role in his interactions with the police." Plaintiff's Response to Massport's Statement of Undisputed Facts ¶ 39. Because the BASS tool was not used it is completely irrelevant. This, alone, should be sufficient to grant summary judgment.

Even without his admission the record does not support Downing's contentions regarding the BASS tool.

> [M]otions for summary judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal. As we have warned, 'brash conjecture, coupled with earnest hope that something will eventually materialize is insufficient to block summary judgment.'

---

[1] Defendants State Police, Colonel Robbins, and Sergeant DiDomenica are relying on their argument that there was no Fourth Amendment violation as set out in their motion for summary judgment.

1

*Segarra-Jiminez v. Bance Popular de Puerto Rico*, 2007 WL 1519540 *1 (internal citations and quotes omitted).

Downing's claims against the Massachusetts State Police, Colonel Robbins, and Sergeant DiDomenica rise or fall on whether he can prove that the BASS[2] threat assessment tool was used during his stop at Logan Airport. Although his complaint alleges that the troopers present at the incident at Logan Airport employed the BASS threat assessment tool [complaint generally], Downing testified at his deposition that he does not know whether they used it. In his consolidated reply to defendants' motions for summary judgment, Downing fails to point to a single piece of affirmative evidence that the BASS program was used by any of the troopers involved in the incident. Indeed, all evidence is that it was not used. This is not a trial worthy case.

To withstand summary judgment, Downing speculates that maybe the jury will not believe the troopers. This is insufficient. Any question of credibility is not appropriate at the summary judgment stage. *Ruiz Rivera v. Pfizer Pharmaceutical LLC*, 463 F. Supp. 2d 163, 169, *citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Downing is required to produce affirmative evidence, not merely speculate about the evidence that the defendants have produced. *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

Further supporting the entry of summary judgment is the defendants' affirmative evidence. And this evidence is overwhelming. The initial Trooper involved in the incident, Trooper Thompson, testified at his deposition that he did not use the BASS tool as it was designed for assessing a terrorist threat. Exhibit A pp. 42:23-24 & 43:1-10 And he did not

---

[2]BASS is also referred to as PASS.

believe he had a potential terrorist in front of him. Indeed, he believed he had an "irate," a garden variety problem. Exhibit A 93:18-24 & 94:1-8

The second trooper to arrive on the scene at the airport was Trooper Howard Croxton, an African-American trooper like Trooper Thompson. At his deposition he testified that he did not use the behavior recognition training to assist Trooper Thompson. See Exhibit B p. 53: 7-15 And the other African-American troopers on the scene, Troopers Adell and Moore, were also deposed. Trooper Adell did not remember a lot of the incident. Trooper Moore had a better memory, and at his deposition he testified that he was told that Downing instigated an argument with Trooper Thompson. Exhibit C p.32: 10-13 He further testified that he did not use the PASS or BASS tool with Downing. Exhibit C p.66:3-6

The only white trooper on the scene was a Sergeant on a traffic detail. He testified as to what Thompson told him about Downing: that Downing was uncooperative at a phone booth, and he wanted to check him on the trespass list. Exhibit D pp.18:10-14 & 19:1-3 His best memory was that he did not receive any PASS or BASS training until after this incident. Exhibit D p. 28:7-11

In his opposition Downing fails to present hard evidence that Trooper Thompson thought he was a terrorist. Nor can he point to anything that the other troopers did that indicates they thought he was a terrorist, and thus, someone for whom the BASS threat assessment tool was designed.

For example, there is nothing in the record to support that Trooper Thompson or the other troopers on the scene contacted, or even mentioned, Homeland Security. No one called Downing a terrorist or mentioned any potential terrorist affiliations such as Al Qaeda. They

showed no concern that he was carrying a weapon, or a bomb. They did not ask if he had accomplices. And they did not move him to a private room to interrogate him. They let him leave.

Even Downing had to admit that the troopers were not talking about putting him on a terrorist list, they were talking about putting him on a trespass list - a list that had existed at the airport and was used to identify "irates," people who had no legitimate reason to be on the premises. Exhibit E pp. 37, 96 & 97  And their concern for "irates" was not unique to Downing, for "irates" had been a concern at the airport for some time. In fact, part of Trooper Thompson's job was to handle "irates." Exhibit A p. 42:3-10

To survive summary judgment Downing was required to present a *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986)(italics in original). A genuine issue does not "spring into being simply because [Downing] claims that one exists." *United States v. 6 Fox Street*, 480 F. 3d 38, 42 (1st Cir. 2007), *quoting Griggs-Ryan v. Smith,* 904 F. 2d 112, 115 ( 1st Circuit 1990).  Downing was required to produce "hard evidence of a material factual dispute." *Id.*

And his opposition fails to do so.  There is no material fact in dispute regarding whether the BASS threat assessment tool was used because Downing does not have a single piece of hard evidence to support his contention that it was used. *See Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007) ("At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts).  Any dispute regarding whether the BASS program was used is not genuine because Downing is merely speculating. And  he is speculating in the face of his own admission that he knows the BASS program was

not used during his incident. This is not enough to survive summary judgment. *Vives v. Fajardo*, 472 F. 3d 19,22 (1st Cir. 2007)

Apart from his own speculations, he is asking this Court to rule that he should survive summary judgment because the jury can speculate as to whether BASS was used. But this is unacceptable. *See id.* ("...[an opponent to summary judgment] must do more than simply show that there is some metaphysical doubt as to the material facts... .") Downing's assertion that BASS was used is unsupported by the record. Thus, there is no evidence for this court to weigh against the defendants' considerable evidence that the BASS program was not used. As such, Downing fails in his burden to provide hard evidence to create a genuine issue of material fact, and defendants Robbins, Di Domenica, and the Massachusetts State Police are entitled to summary judgment.

Apart from mere speculation, Downing's only other basis for asserting that the BASS program was used is illustrated by the following proposition: because Trooper Thompson received training in the BASS program on March 13, 2003, he must have used it seven months later on October 16. But, as Trooper Thompson himself testified, he did not. And Downing's proposition is based on an unspoken and false premise: once trained, you will always employ that training either consciously or - apparently - subconsciously. Downing has no evidence to refute Thompson's testimony that he consciously did not use BASS when dealing with Downing. As for whether he used it subconsciously, i.e., a day long training from 7 months before controlled Thompson's actions that day, this is really a metaphysical debate and not a trial worthy issue. It is akin to claiming that an orthopedic surgeon who went to a day training on pediatric psychology is always controlled by that training - consciously or unconsciously - when

5

he performs hip replacements on his geriatric patients. The problem with this proposition is that there is no reason to use that training for geriatric hip replacements  In the appropriate circumstances, such as dealing with his or her children, it may come in handy, but it does not inform the orthopedic surgeon's geriatric hip replacement practice. And that is the case here. As much as Downing would like to present his situation as being a zebra, it is really nothing more than a horse. The troopers testified that they did not consider Downing a terrorist. Thus, they had no reason to employ the BASS terrorist training.

Downing attempts to shore up his unfounded proposition by stating that the Court can infer that because Thompson acted in accordance with the BASS tool, he must have been using it. But this is not a reasonable inference. Indeed, his examples of Thompson acting in accordance with the BASS tool could just as easily be applied to any law enforcement encounter. Downing's "evidence" that Thompson was using the BASS protocol consists of Downing's statement that Thompson "approached him, and asked him a series of questions, including to see [his] identification." Plaintiff's opposition p. 14. That a law enforcement officer would stop someone and question them, asking for their identification, is certainly not evidence of the officer implementing an anti-terrorism tool, particularly where the officer testified that the individual was argumentative and confrontational. *See Florida v. Bostick*, 501 U.S. 429, 434-35(1991)(police officer can approach an individual without cause and ask him questions, including asking for identification). And Trooper Thompson's informing Downing that he would have to leave the airport if he did not provide identification and travel documents comports with his testimony that he thought Downing was an "irate." It is mere fancy to speculate that Thompson thought Downing a terrorist. Given Downing's logic, any law

enforcement officer ever trained in BASS who asked anyone a series of questions, would automatically be involved in a terrorist threat exercise. But there is no evidence to support this, and no reason for the Court to accept such a proposition as - contrary to Downing's assertions - he has failed to produce any evidence that would provide a justifiable basis to present his case to the fact finder.

He further asserts that there was no reason to "confront" him except to carry out the BASS protocol. [Opposition p.14]. This is mere speculation, and nothing more. *See Hoyos v. Telecorp. Communications, Inc.*, 2007 WL 1453924 * 3 (1st Cir. 2007)(speculation not sufficient to withstand summary judgment). And while Trooper Thompson and he dispute how their interactions took place, this is not material to the question whether the protocol was used. Thompson has testified that, contrary to Downing's protestations, he was argumentative and Thompson thought he was an "irate." Their difference of opinion as to how they met and interacted, does not put the BASS protocol on trial.

Downing's hope that the jury will speculate that the BASS program was used despite no evidence to support that theory, and overwhelming evidence to debunk it, is not sufficient to survive summary judgment. *Vives,* 472 F. 3d at 22.

Thus, Downing has no case to present regarding whether the BASS program was used. In fact, he admits that it was not used. And he has no witness who will testify that it was used. He has no documentary evidence that supports that it was used. Further, he has no actions or statements by the troopers to reasonably suggest that it was used. Given this, Downing fails to meet the elemental requirement that he produce hard evidence of a genuine issue of material fact that the BASS tool was used during his incident. And because of this summary judgment should

enter for the defendants Robbins, Didomenica, and the Massachusetts State Police.

### DOWNING'S INABILITY TO PRESENT EVIDENCE THAT THE BASS PROGRAM WAS USED PRECLUDES HIM FROM ASKING THE COURT TO REVIEW IT

As more fully set out in their motion for summary judgment, there is no case or controversy that would give rise to declaratory relief. And nothing in Downing's opposition changes that. Thus, there is no authority to review the BASS threat assessment tool.

Further, Downing has operated on the proposition that the BASS tool is a state-wide policy, complaint paragraphs 1, 24, & 36, but as was clear from Sgt. Didomenica's testimony, it was a draft order that was never executed. Exhibit F pp. 30-32:1-5  And the Sergeant further testified that he did not have the ultimate authority for determining whether it would be executed as a state-wide order. *See and cf. Wilson v. City of Boston*, 421 F. 3d 45, 59 (1st Cir. 2005)("An unconstitutional policy ... may be inferred from a single decision or act ... [but] the isolated action must be taken by a municipal official with 'final policy-making authority' in the relevant area of the city's business)(internal citations and quotes omitted); [Exhibit F pp. 30 - 32:1-5]. Thus, Downing's failure to establish his burden that the BASS tool is relevant, and his failure to prove that it is a state-wide policy foreclose any judicial review. *See Id. at* 59-60 ( "Not every police operation is a municipal policy; [Downing] has the burden of establishing that this particular operation *was* City policy)

Even if there was authority for reviewing it, the following language contained in the BASS tool refutes Downing's allegations:

> [r]acial profiling practices are contrary to the fundamental values of our nation and serve to disenfranchise whole segments of our population.

Exhibit G  p. 2

In the face of this express condemnation of racial profiling, Downing merely speculates

that racial profiling is allowed in the program.  But such an assertion is unfounded.  Further, the record reflects that racial profiling was not permitted by the BASS tool  Exhibit G & Exhibit F p. 38:11-24 & 39:1-23.  And the record reflects that the BASS training provided that absent reasonable suspicion an encounter was required to be voluntary. Exhibit F p. 40:3-10

COLONEL ROBBINS AND SERGEANT DIDOMENICA ARE ENTITLED TO QUALIFIED IMMUNITY FROM THIS LAWSUIT

The BASS screening tool is not unconstitutional.  It condemns racial profiling, and it does not provide for unlawful seizures. For this reason, and because they are qualifiedly immune from suit, summary judgment should enter in favor of Colonel Robbins and Sergeant Didomenica.

Downing's opposition fails to refute the basis for qualified immunity for the Colonel and the Sergeant.  While Downing may have set forth a number of allegations in his complaint, the factual context set out in the record does not support them.  *See Wagner v. City of Holyoke*, 404 F. 3d 504, 509 (1st Cir. 2005)(plaintiff's asserted right must be placed in a reasonably specific context). Thus, at the summary judgment stage, Downing's claim does not meet the first requirement of the qualified immunity test: that he have a constitutional right set forth in a reasonably specific factual context.  As for the second requirement, the fair warning afforded an individual defendant in a civil rights lawsuit,  it is not the warning set forth in the complaint, but the warning set forth in the law that controls.  And under the requisite factual context, the drafting and training on behavior pattern recognition to screen out a terrorist threat at a critical infrastructure, neither the Colonel nor the Sergeant received fair warning that the BASS tool might violate either the state or federal constitutions. As the Sergeant testified, he did considerable research and interviewed scholars regarding this protocol.  Exhibit F p. 21:18-24 &

9

pp. 22-28 Nothing in his research or interviews suggested that such a screening device would be constitutionally suspect. Thus, Downing's claim does not meet this requirement. As for the final requirement, given the necessity for the program, and the extensive past and ongoing research on the program, these objectively reasonable officials could not have believed they were violating any constitutional right. *Hatch v. Department for Children, Youth, and their Families*, 274 F. 3d 12, 20 (1st Cir. 2001). Even if their actions were unconstitutional - and they were not - they were objectively reasonable. *Wilson v. City of Boston*, 421 F. 3d 45, 55 (1st Cir. 2005). As a matter of law, defendants Robbins and DiDomenica are entitled to qualified immunity. *Suboh v. District Attorney's Office*, 298 F. 3d 81, 90 (1st Cir. 2002).

        Respectfully Submitted,
        COMMONWEALTH OF MASSACHUSETTS

        By its Attorneys,

        MARTHA COAKLEY
        ATTORNEY GENERAL

        /s/ Mary O'Neil
        /s/ Mary O'Neil, BBO #379430
        Assistant Attorney General
        Government Bureau/Trial Division
        One Ashburton Place, Room 1813
        Boston, MA 02108-1598
        (617) 727-2200 x 2636

Date:  June 29, 2007

**CERTIFICATE OF SERVICE**

      In accordance with L.R. 5.2(b) and Section E.2 of the Electronic Case Filing Administrative Procedures of the United States District Court for the District of Massachusetts, I, Mary O'Neil hereby certify that on June 29, 2007 I filed the above affidavit through the ECF system.

                                _____/s/ Mary O'Neil_____
                                Mary O'Neil, Assistant Attorney General
                                Government Bureau/Trial Division