**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KING DOWNING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MASSACHUSETTS PORT AUTHORITY, THE ) | Civil Action No. 04-12513-RBC |
| MASSACHUSETTS DEPARTMENT OF STATE ) | |
| POLICE, STATE POLICE TROOPER ) | |
| THOMPSON, STATE POLICE SERGEANT ) | |
| CROXTON, THOMAS G. ROBBINS, and ) | |
| PETER J. DIDOMENICA, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT MASSACHUSETTS PORT AUTHORITY'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OR,**
**IN THE ALTERNATIVE, FOR CLARIFICATION**

Defendant Massachusetts Port Authority ("Massport") files this Memorandum of Law in Support of its Motion For Reconsideration Or, In The Alternative, For Clarification. Though it addresses all of Massport's co-defendants, the Court's electronic order issued on November 7 provides no discussion or analysis of Massport's summary judgment motion, other than to note that the motion is denied.

Downing alleges (with no evidentiary support) that Massport's co-defendants, the State Police, confronted Downing pursuant to a behavioral assessment program (known as the B.A.S.S. program), which Downing alleges permits and condones racial profiling or otherwise unlawful searches and seizures. Massport's only connection to the issues in question is its sponsorship of the B.A.S.S. program. Because Massport cannot be held liable for the alleged actions of its co-defendants, the State Police, *Monell v. Dep't of Soc. Servs. of the City of New*

*York*, 436 U.S. 658, 691 (1978), Massport can only be held liable if the program was in fact implicated and was in fact unconstitutional on its face, *Mailloux v. Town of Littleton*, 473 F. Supp.2d 177, 190 (D. Mass. 2007). There is simply no evidence that could support those contentions. Under these circumstances, Massport respectfully asks the Court to reconsider its recent decision to deny Massport's summary judgment motion, as no genuine issues of material fact exist to support a basis for liability against it.

First, Plaintiff Downing has produced no evidence – only mere speculation – that the B.A.S.S. program was the impetus for his encounter with police. Absent evidence that the B.A.S.S. program played any role here, Massport has no connection to the purported events in this case and faces no liability. Second, even assuming the B.A.S.S. program was the impetus for the stop – which all Defendants deny – there is no evidence that the B.A.S.S. program either condones racial profiling or somehow countenances unlawful searches and seizures. Unless there exists on the face of the training materials evidence that would warrant a finding that the B.A.S.S. program condones unlawful conduct, there can be no liability imposed upon Massport, since its only role here was the joint sponsorship of the implementation of the program by the State Police.[1] Third, even assuming Downing was impermissibly seized, Massport cannot, as a matter of law, be held liable for any alleged constitutional violations committed by others under the circumstances here.

---

[1] Even if evidence of an improper process exists on the face of the training materials (which it plainly does not), that, alone is insufficient to impose liability on Massport where no evidence exists to support Downing's claim that the B.A.S.S. program was the impetus for his encounter with Trooper Thompson. Because Downing cannot demonstrate that the B.A.S.S. program was the basis for his interaction with State Police, he has no standing to challenge the program generally. To hold otherwise would enable him to obtain an impermissible advisory opinion concerning the constitutionality of the B.A.S.S. program.

To the extent the Court declines the invitation to reconsider its ruling, Massport respectfully requests that the Court clarify its Order and identify the genuine issues of material fact that it believes exist relating to Massport's potential liability, so that Massport can evaluate the specific claims against it and properly prepare for trial, scheduled to begin on December 3, 2007.

**I.  THE ORDER DENYING MASSPORT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE RECONSIDERED BECAUSE THERE IS NO BASIS TO IMPOSE LIABILITY UPON MASSPORT AS A MATTER OF LAW**

As a threshold matter, but for the alleged role of the B.A.S.S. program in the encounter between Downing and Trooper Thompson, Massport would have absolutely no connection to the events in this case. As Massport stated in its moving papers, there is no evidence that the B.A.S.S. program played any role here. *See* Massport's Memo. of Law in Support of its S.J. Mot. at 8-11; Massport's Reply in Support of its S.J. Mot. at 2-4. At best, there is only unsupported conjecture by Downing that B.A.S.S. *may* have been used in his interaction with Trooper Thompson. In its Order, the Court noted that "there are more specific provisions [of the B.A.S.S. program] which could reasonably be found to be coercive, i.e., the directive that when a person refuses to answer questions or provide identification or travel documents, he or she is to be escorted away from the airport." Order denying S.J. Mots. issued Nov. 7, 2007. But that practice is merely standard operating procedure when any individual refuses to provide identification while at the airport, and has nothing to do with the B.A.S.S. program. *See* Thompson Depo. at 55:20-56:10 (noting that asking an individual to leave the airport who has no business there is part of training) previously provided, attached to Tenn Aff. at Ex. B, March 1, 2007. Indeed, as the name of the program suggests, the B.A.S.S. program is principally

concerned with "behavioral assessment"; escorting an individual away from the terminal should not be confused with the implementation of B.A.S.S. techniques.[2]

Even assuming the B.A.S.S. program was employed and was the initiating factor in the encounter between Downing and the State Police, there is no evidence supporting the claim that B.A.S.S. permits or condones racial profiling. To the contrary, as recognized by Downing in his opposition papers, "the B.A.S.S. program materials acknowledge that 'racial profiling practices are contrary to the fundamental values of our nation and serve to disenfranchise whole segments of our population.'" Pl.'s Opp. to Defs.' S.J. Mots. at 3 (brackets omitted). Indeed, the Court, in its Order, identifies no genuine issue of material fact that exists to suggest that B.A.S.S. in any way condones racial profiling. *See generally* Order issued Nov. 7, 2007.

Finally, even assuming Downing was seized, Massport remains immune from liability as a matter of law. To the extent Downing seeks to hold all Defendants liable for civil rights violations under 42 U.S.C. § 1983, Massport cannot be liable for any such alleged deprivation of Downing's rights committed by others. Indeed, it has long been recognized that a local government or government agency "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 691 (holding that a municipality "cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). Rather, only when "execution of a government's policy or custom . . . inflicts the injury" can the government as an entity be "responsible under § 1983." *Id*. at 694; *Mailloux*, 473 F. Supp.2d at 190 ("Municipalities cannot

---

[2] Moreover, notwithstanding the Court's Order, there is no dispute that Trooper Thompson was the only officer involved in the initial encounter with Downing while inside the unsecured area of the terminal; Trooper Croxton only arrived during the second interaction with Downing outside of the terminal, after Trooper Thompson radioed for back up. *See* Pl.'s Response to Massport's State of Undisputed Fact ¶¶ 22-24.

be held liable for constitutional torts under 42 U.S.C. § 1983 based upon the theory of *respondeat superior.* Instead, § 1983 liability must be grounded in the execution of a government policy or custom to implicate a municipality in the deprivation of a person's constitutionally protected rights."). Here, because there is no evidence that the B.A.S.S. program played any role in the encounter between Downing and the State Police, and no evidence that the policy condones racial profiling (or any other unlawful conduct), no liability can be imposed upon Massport, even assuming Downing was unreasonably seized – which Massport denies. *See Mailloux*, 473 F.Supp.2d at 190. Finally, here, where the officers themselves have claims for immunity, no liability can flow back to Massport as a result of the officers' otherwise protected actions.

## II.     IN THE ALTERNATIVE, THE ORDER DENYING MASSPORT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE CLARIFIED

In the event that the Court declines to reconsider its Order, Massport respectfully requests that the Court clarify its Order and identify the genuine issues of material fact that it believes are in dispute concerning Massport's role in the instant action. Indeed, the Court's Order states that the facts most favorable to Plaintiff could support a conclusion by a jury that Downing was seized without reasonable suspicion or probable cause, causing him to suffer a deprivation of constitutional rights. Even if a jury could reach that conclusion, as discussed above, that deprivation is insufficient to impose liability upon Massport, as Massport would have no connection whatsoever to that incident and should face no liability for alleged constitutional violations committed by others.

Although the Court asserted that there is evidence from which a jury could conclude that the existence of the B.A.S.S. program was the proximate cause of Downing's deprivation of rights, Massport again notes that no evidence exists in the record from which that conclusion

-5-

could be drawn. First, any alleged "directive" to escort individuals away from the airport referenced by the Court is routine procedure at the airport, not unique to B.A.S.S. training.[3] Second, where there is no basis to conclude that the B.A.S.S. program impermissibly condones racial profiling, there can be, as a matter of law, no basis for the jury to conclude that the B.A.S.S. program leads to impermissible searches and seizures for which Massport can be liable.

If, as the Court's Order suggests, this case is about searches and seizures, not racial profiling, where there is no evidence that Massport has any connection to the underlying encounter between Downing and the police, Massport can have no liability for the acts alleged. In the event that the Court nonetheless declines to reconsider its denial of Massport's summary judgment motion, Massport respectfully requests that the genuine issues of material fact that the Court believes are in dispute as they relate to Massport's potential liability be identified, so that Massport can understand the claims against it and prepare for trial. *See* Fed. R. Civ. P. 56(d).

---

[3] Indeed, the B.A.S.S. program is merely a behavioral assessment program – it does not dictate stringent procedural protocols.

## **CONCLUSION**

For the reasons set forth above, the Court's Order of November 7, 2007, denying Massport's motion for summary judgment should be reconsidered and vacated. In the alternative, Massport respectfully requests that the Court provide clarification, identifying what genuine issues of material fact exist so that it may prepare for trial.

Date:   November 13, 2007             Respectfully submitted,

                                      MASSACHUSETTS PORT AUTHORITY

                                      By its attorneys,

                                      /s/ Annmarie A. Tenn
                                      Roscoe Trimmier, Jr.  (BBO #502506)
                                      Annmarie A. Tenn (BBO #658789)
                                      Ropes & Gray LLP
                                      One International Place
                                      Boston, Massachusetts 02110
                                      (617) 951-7000
                                      roscoe.trimmier@ropesgray.com
                                      annmarie.tenn@ropesgray.com

-8-

## CERTIFICATE OF SERVICE

In accordance with L.R. 5.2(b) and Section E.2 of the Electronic Case Filing Administrative Procedures of the United States District Court for the District of Massachusetts, I, Annmarie A. Tenn, hereby certify that on November 13, 2007, the within Memorandum of Law filed through the ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing.

/s/ Annmarie A. Tenn
Annmarie A. Tenn