UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KING DOWNING,<br>    Plaintiff<br><br>V.<br><br>MASSACHUSETTS PORT AUTHORITY,<br>THE MASSACHUSETTS DEPARTMENT<br>OF STATE POLICE, STATE POLICE TROOPER<br>THOMPSON, STATE POLICE SERGEANT<br>CROXTON, THOMAS G. ROBBINS, and<br>PETER J. DIDOMENICA,<br>    Defendants | )<br>)<br>)<br>)   C.A. No. 04-CV-12513-GAO<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT WILLIAM THOMPSON'S**
**PRE-TRIAL MEMORANDUM**

Defendant William Thompson ("Thompson")[1] herein files his Pre-Trial Memorandum in accordance with this Court's Pre-Trial Order and Local Rule 16.5.

I   **Concise Summary of Evidence to be Offered by Thompson**

Trooper Thompson has been a Massachusetts State Police officer for 21 years and transferred to Logan Airport in 2001 after 9/11. He has remained at Logan Airport through to the present date.

On October 16, 2003, he was assigned to patrol Terminal B to check law enforcement officers through the security checkpoint. Trooper Thompson was standing at a location where he could monitor the security checkpoint, when the Plaintiff said to him in a confrontational and condescending tone, "Why are you standing there?" "Why are you listening to the conversation?".

---

[1] Plaintiff states that he will voluntarily dismiss Defendant Howard Croxton. Therefore, this Pre-Trial Memorandum concerns the remaining claims against William Thompson.

At the time that the Plaintiff initiated this conversation, the Plaintiff was at a bank of telephones in close proximity to where Thompson was standing monitoring the security checkpoint. Thompson responded to the Plaintiff by asking him "if he could help him(Plaintiff) with anything?" to which the Plaintiff responded with "I don't have to talk to you." The Plaintiff continued with his confrontational and aggressive behavior and refused to produce any documentation or identification to Thompson.

In conformance with his training at Logan Airport, Thompson told the Plaintiff that if he did not have business at the airport he would have to leave. The Plaintiff left Terminal B area at the upper level from where he was not going to be able to leave the airport.

Thompson followed the Plaintiff out to the upper level to monitor him while calling for assistance. Other State Police troopers responded to Thompson's request for assistance. Trooper Howard Croxton, Trooper Wanza Adell and Trooper Robert Moore arrived and then Sergeant Mark Kiley arrived at which time the Plaintiff produced his boarding pass and license which was checked for warrants and against the airport trespass file. Once that was done the Plaintiff left the airport.

The Plaintiff was not arrested or detained by Thompson. He was free to leave the airport at any time.

II **Facts Stipulated to by the Parties**

The parties have agreed to permit live evidence at trial of the facts to which they have also stipulated.   The parties have stipulated to the following description of the case to be read to the jury.

- 3 -

On October 16, 2003, Mr. King Downing, who is African-American, arrived at Logan Airport on an Alaska Airlines overnight flight from the west coast. After deplaning in Boston early in the morning, Mr. Downing left the gate area and stopped to make a phone call to retrieve voicemail from a public telephone on the non-secure upper level of the terminal near the airport exit. Shortly after getting on the phone, Mr. Downing had contact with the Massachusetts State Police Trooper Thompson inside the airport terminal, and then outside the terminal. Trooper Thompson asked Mr. Downing to produce identification, which he declined to do. Outside the terminal, Tpr. Thompson ultimately called for additional police, and four other uniformed troopers responded. Mr. Downing ultimately left the airport after he had provided the troopers with his identification and boarding pass showing that he had recently arrived at Logan.

Downing contends that Tpr. Thompson stopped him based upon a program known as the Behavior Assessment Screening System ('BASS"). At various points, this program was also known as the Passenger Assessment and Screening System ('PASS"). PASS and BASS were the same and are referred to here as BASS. The program uses a series of factors to identify potential threats to airport security and was customized for use by the State Police by State Police Sergeant Peter DiDomenica.

This case will involve questions of what happened on that morning between Mr. Downing and the police, and whether what happened was the result of BASS.

III     **Disputed Factual Issues**

-   Who initiated the interaction between Thompson and Downing?

-   Was the interaction between Thompson and Downing a "stop"?

-   Was the interaction between Thompson and Downing a seizure in light of the Fourth Amendment?

-   Was the interaction between Thompson and Downing initiated as a result of racial profiling?

-   Is Thompson entitled to qualified immunity from liability as it was not clearly established law that his interaction with Downing was violative of Downing's Fourth Amendment rights?

IV     **Issues of Law for Trial**

Fourth Amendment

In the instant matter, Plaintiff has alleged in his §1983 claim that his encounter with Thompson and other officers on October 16, 2003 whereby he was asked to produce his identification and travel documents constituted a seizure unsupported by probable cause or reasonable suspicion and thus violated his Fourth Amendment right to be free from an unreasonable seizure.

Under the Fourth Amendment, individuals are afforded the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure." U.S. Const.Amend. 4.  Thus, from the outset of its analysis, the Court must determine whether either Thompson unreasonably seized Plaintiff during their limited encounter.

It is well-settled that not every encounter between citizens and law enforcement officers rises to the level of a seizure under the Fourth Amendment.  _United States v. Mendenhall_, 446 U.S. 544, 552 (1980).  Were the courts to characterize every interaction between an individual and the police as such, they "would impose wholly unrealistic

restrictions upon a wide variety of legitimate law enforcement practices." *Id.* at 554. Rather, the United States Supreme Court has recognized the practical need for police questioning, stating that "[w]ithout such investigation, those who were innocent might be falsely accused, those who were guilty might wholly escape prosecution, and many crimes would go unsolved.  In short, the security of all would be diminished." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973), citing *Haynes v. Washington*, 373 U.S. 503, 515 (1963).

The Supreme Court has consistently held that a police officer does not violate the Constitution by approaching individuals on the street or in other public places and asking them questions.  *United States v. Drayton*, 536 U.S. 194, 200-201 (2002); *United States v. Mendenhall*, *supra*; *Terry v. Ohio*, 392 U.S. 1 (1968) (White, J. concurring). The key inquiry in determining when a permissible encounter morphs into an unconstitutional seizure, therefore, is whether the individual's freedom of movement was objectively restrained either through actual physical restraint by the officer or compelled by a show of authority.  *United States v. Smith*, 423 F.3d 25, 28 (2005).  In other words, an interaction will be deemed a seizure only when an objectively reasonable innocent person would not have felt free to terminate the conversation and leave the scene.  *Id.* at 28, n.5, citing *Florida v. Bostick*, 501 U.S. 429, 438 (1991).

While it is anticipated that most, if not all individuals naturally would feel some degree of compulsion or acquiescence to authority in dealing with the police, the courts should examine the particular circumstances "beyond the show of governmental authority inherent in the mere presence of the police." *Commonwealth v. Pimental*, 27 Mass.App.Ct. 557, 560 (1989).  Factors which may indicate a seizure occurred are:

"1. the threatening presence of several officers; 2. the display of a weapon by an officer; 3. some physical touching of the person; and 4. the use of language or tone of voice indicating that compliance with the officer's request might be compelled."  <u>Id.</u> at 29, citing <u>Mendenhall</u>, <u>supra</u> at 554;  <u>see also</u> <u>Hatheway v. Thies</u>, 335 F.3d 1199 (10th Cir.2003) (same factors as well as prolonged retention and interaction in a non-public place).  While these factors may be considered during the court's analysis, they certainly are not exhaustive nor may the court rely upon a single factor in making its determination.  <u>Id.</u>  Rather, the court should base its findings on the totality of the circumstances surrounding the interaction.  <u>Florida v. Bostick</u>, 501 U.S. at 439. <u>Compare Brown v. Texas</u>, 443 U.S. 47, 49 (1979) (No seizure found during encounter in alley when police asked individual to identify himself until police frisked him following his refusal and questioning of police authority); <u>Florida v. Royer</u>, 460 U.S. 491 (1983) (Seizure occurred when officers approached individual, retained his identification and airplane ticket and took him to a small police room where they searched his luggage) <u>See e.g.</u> <u>United States v. Smith</u>, 423 F.3d at 30-31 (No seizure where police positioned near telephone pole in front of defendant); <u>United States v. Bostick</u>, 501 U.S. at 436 (No seizure when defendant on a bus and police came down the aisle toward him, blocking his path); <u>INS v. Delgado</u>, 466 U.S. 210, 218-219 (1984) (No seizure where agents stationed at the exits of a factory); <u>United States v. Brown</u>, 169 F.3d 89, 92 (1st Cir.1999) (No seizure when officer confronted defendant on a stairwell, blocking his path).

Qualified Immunity

The Supreme Court has long recognized that governmental officials have a qualified immunity from liability for actions taken in the course of their official duties. In <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982), the Court held:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

The determination of whether an officer is entitled to the defense of qualified immunity is a question of law for the courts, <u>Starlight Sugar, Inc. v. Soto</u>, 253 F.3d 137, 141 (1st Cir. 2001), and one which normally is resolved prior to trial on a motion for summary judgment. Moreover, where "[t]he privilege is an *immunity from suit* rather than a mere defense to liability, [the Supreme Court has repeatedly] stressed the importance of resolving immunity questions at the earliest possible stage of litigation." <u>Saucier v. Katz</u>, 533 U.S. 194 (2001) (internal citations omitted); <u>see</u> <u>also</u> <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 24-30 (1985) (The rejection of a qualified immunity defense is immediately reviewable under the collateral order doctrine.).

In analyzing whether qualified immunity applies in a particular case, the reviewing court must resolve the following questions: "1.) whether the plaintiff suffered a constitutional injury, <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999), and 2.) whether 'an objectively reasonable official would have believed that his conduct was lawful 'in light of clearly established law and the information that the official possessed at the time of his allegedly unlawful conduct.'" <u>Jarrett v. Town of Yarmouth</u>, 309 F.3d 54, 61

(1st Cir. 2002), quoting <u>Kelley v. LaForce</u>, 288 F.3d 1, 7 (1st Cir. 2002). Thus, assuming evidence of a constitutional injury or violation has been put forth by the plaintiff, the applicability of qualified immunity will hinge on the second prong of reasonableness.

>   Discussing <u>Harlow</u>, the Supreme Court stated:
>
>   > [A]n allegation of malice is not sufficient to defeat immunity if the Defendant acted in an objectively reasonable manner . . . Defendants will not be immune if, on an objective basis, it is obvious that <u>no</u> reasonable competent officer would have concluded that a warrant should issue; but <u>if officers of reasonable competence could disagree on this issue, immunity should be recognized</u> . . . <u>the Harlow standard . . . gives ample room for mistaken judgments</u>.

<u>Malley v. Briggs</u>, 475 U.S. 335, 341 (emphasis supplied). The Supreme Court has subsequently reaffirmed the "objective legal reasonableness" standard of <u>Harlow</u>, and emphasized the appropriateness of granting summary judgment in these cases. <u>Anderson v. Creighton</u>, 483 U.S. 635, 97 L.Ed.2d 523 (1987). The reasonableness of a defendant's actions may only be determined by examining his actions in light of the particular circumstances known to him at the time of the act. For an act to fall outside the scope of immunity, "in the light of pre-existing law the unlawfulness must be apparent," <u>Id</u>. at 635; <u>see also Saucier</u>, 533 U.S. at 201, quoting <u>Anderson, supra</u> ("[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). In other words, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Anderson</u>, 483 U.S. at 638-639.

V.  **Amendment to the Pleadings**

Thompson does not anticipate amending his pleadings.

VI.  **Additional Matters to Aid in the Disposition of This Action**

Thompson has submitted herewith a Motion in Limine to Exclude from trial any evidence concerning the BASS program.

VII  **Witnesses for Thompson**

Thompson is expected to call as a witness the following individuals:

State Police Trooper William A. Thompson (fact witness)

State Police Trooper Howard G. Croxton (fact witness)

State Police Trooper Wanza Adell (fact witness)

State Police Trooper Robert J. Moore (fact witness)

State Police Sergeant Mark W. Kiley (fact witness)

VII  **Proposed Exhibits**

Downing's plane boarding pass/ticket

Thompson incorporates as additional exhibits those identified by co-defense counsel and presented to Plaintiff's counsel pursuant to this Court's order.

IX  **Thompson's Trial Counsel**

Joseph P. Kittredge, (BBO #548841)
Rafanelli & Kittredge, P.C.
One Keefe Road
Acton, MA 01720-5517
(978) 369-6001

        Respectfully Submitted,

        RAFANELLI & KITTREDGE, P.C.


        /s/ Joseph P. Kittredge
        Joseph P. Kittredge, BBO #548841
        Suzanne T. Caravaggio, BBO #634175
        One Keefe Road
        Acton, MA 01720-5517
        (978) 369-6001


## **CERTIFICATE OF SERVICE**

  I hereby certify that on this date this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants as of November 21, 2007.

        /s/ Joseph P. Kittredge
        Joseph P. Kittredge