UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
KING DOWNING,                )
    Plaintiff,            )
                                                                )    Civil Action No. 04-12513-RBC
v.                           )
                             )
MASSPORT, MASSACHUSETTS STATE )
POLICE, ET AL,               )
    Defendants.           )
_____)

## DEFENDANTS' REQUEST FOR JURY INSTRUCTIONS

    Defendants Massachusetts State Police, Colonel (ret.) Thomas G. Robbins, and State Police Sergeant Peter J. Didomenica request, pursuant to Fed. R. Civ. P. 51, that the Court instruct the jury on the law as set forth in the following requests.

                                          Respectfully submitted,

                                          MASSACHUSETTS STATE POLICE,
                                          COLONEL (RETIRED) THOMAS G.
                                          ROBBINS, AND SERGEANT PETER J.
                                          DIDOMENICA
                                          By their Attorney,

                                          MARTHA COAKLEY,
                                          ATTORNEY GENERAL FOR
                                          MASSACHUSETTS

                                          /s/ Mary O'Neil_____
                                          Mary O'Neil BBO #379430
                                          Lisa Fauth BBO #659505
                                          Assistant Attorneys General
                                          Government Bureau/Trial Division
                                          One Ashburton Place
                                          Room 1803
                                          Boston, MA. 02106
                                          (617) 727-2200 X2636; X2817

Dated: November 28, 2007

<u>DEFENDANTS' REQUESTED JURY INSTRUCTION NUMBER 1</u>

General Standard of Liability Under 42 U.S.C. sec. 1983
[Defendants' Robbins and Didomenica]

In order to find Colonel Robbins and Sergeant Didomenica liable for violating King Downing's constitutional rights under Section 1983 King Downing has the burden of proving by a preponderance of the evidence the following elements:

First, King Downing must prove that Colonel Robbins and Sergeant Didomenica were acting under color of law.

Second, King Downing must prove that Colonel Robbins and Sergeant Didomenica's conduct deprived King Downing of rights, privileges or immunities secured by the Constitution or laws of the United States.

<u>DEFENDANTS' REQUEST JURY INSTRUCTION NUMBER 2</u>

Color of State Law
[Defendants Robbins and Didomenica]

The first element of King Downing's claim is that Colonel Robbins and Sergeant Didomenica acted under color of state law.  In this context, the term "state law" means any statute, ordinance, regulation, or custom.  The word "state" means a state or any political subdivision, such as a county or city, and also means any agency of a state, county, or city.  You may find that the defendants acted under color of law if you find that they were clothed with the authority of the state or exercised power possessed by virtue of law.  Action under color of law includes the misuse of power possessed by virtue of state law and made possible only because the defendants were clothed with the authority of state law.  Thus, even if you find that the defendants acted in violation of state law, you may find that they acted under the color of state.[1]

---

[1] 42 U.S.C. sec. 1983

DEFENDANTS' REQUESTED JURY INSTRUCTION NUMBER 3

[Deprivation of a secured right under section 1983 [Defendants Robbins and Didomenica]

The second element King Downing must prove is that Robbins and Didomenica deprived him of rights, privileges, or immunities secured and protected by the Constitution and laws of the United States. This element has two subparts, each of which must be proved by a preponderance of the evidence.  You, the jury, must determine whether there has been a deprivation of a federally protected right and if Robbins and Didomenica's conduct was causally connected to the deprivation.[2]

King Downing is claiming that he was deprived of his Fourth Amendment right to not be subject to unreasonable seizures.[3]  To prevail on a claim based on deprivation of his rights under the Fourth Amendment it necessarily follows that the King Downing must prove that the he was (1) subjected to a seizure, and (2) that the seizure was unreasonable. As the defendants have introduced evidence and have argued that no constitutional seizure occurred in this case,  you, the jury, must determine whether a constitutional seizure occurred before you can proceed to determine whether the seizure was unreasonable under the circumstances.

---

[2] *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970); *United States v. Price,* 383 U.S. 787, 794 (1966); *Alexis v. McDonald's Rests. of Mass.*, 67 F.3d 341, 351 (1st Cir. 1995); *Wagenmann v. Adams,* 829 F.2d 196, 209 (1st Cir. 1987).
[3] U.S. Const. amend. IV.

DEFENDANTS' REQUESTED JURY INSTRUCTION NUMBER 4

Definition of a Seizure
[Defendants Robbins and Didomenica]

The first issue you must consider is determining if a seizure actually took place. For purposes of the Fourth Amendment, a "seizure" of a person is a situation in which a reasonable person would feel that he or she is not free to leave, and also either actually yields to a show of authority from police or is physically touched by the police. However not all encounters between law enforcement officers and citizens constitute seizures.[4] It is important for you to consider that "law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen."[5]

If King Downing overcomes the burden of proving by a preponderance of evidence that a seizure actually occurred, he still must prove that the seizure was unreasonable. Whether a seizure offends the standard of reasonableness, and thus the Fourth Amendment, is judged by balancing the intrusion on an individual's Fourth Amendment interests against its promotion of legitimate government interests.[6] You, the jury must assess the totality of the circumstances at Logan Airport in order to ascertain whether Trooper Thompson acted reasonably.

---

[4] *United States v. Smith*, 423 F.3d 25, 28 (CA 1 2005).
[5] *United States v. Smith*, 423 F.3d 25, 28 (CA 1 2005). (citing *United States v. Drayton*, 536 U.S. 194, 200-01 (2002).
[6] *Veronica School. Dist. v. Acion*, 515 U.S. 646, 653 (1995).

DEFENDANTS' REQUESTED JURY INSTRUCTION NUMBER 5

No liability for negligence under sec. 1983
[All defendants]

A negligent act by a state official does not give rise to a sec. 1983 claim. For King Downing to prevail, he must prove that the defendants deprived him of his civil rights either intentionally, or by conduct that was deliberately indifferent to his rights.

Negligence, in contrast --- no matter how "gross" it may be - - - exemplifies lack of care, rather than abuse of power. [7]

---

[7] Germany v. Vance, 868 F. 2d 9 (CA1 1989); Daniel v. Williams, 474 U.S. 327 (1986); Davidson v. Cannon, 474 U.S. 344 (1986)

DEFENDANTS' REQUESTED JURY INSTRUCTION NUMBER 6

Supervisory liability under section 1983
[Defendants Robbins and Didomenica]

A supervisor cannot be held liable for money damages under sec. 1983 on a theory of respondeat superior.[8] Nor can liability be imposed for simple failure to exercise proper supervisory control.[9]

A supervisor may be found liable under section 1983 only on the basis of his or her own acts or omissions.[10]

Supervisory personnel cannot be held liable for the constitutional misconduct of their employees unless the Plaintiff can show an "affirmative link" between the supervisor's acts, in this case Colonel Robbins and Sergeant Didomenica, and those of the offending employee.[11] King Downing must show that the acts or omissions of the supervisory defendants, Colonel Robbins, and Sergeant Didomenica, evidence "deliberate indifference" to his constitutional rights, and played a causal role in King Downing's constitutional deprivation.[12]

Thus, Colonel Robbins and Sergeant Didomenica can only be held liable for their own acts or omissions. They must be personally involved in any constitutional violation you may find.[13]

---

[8] Gaudreault v. Municipality of Salem, 923 F. 2d 203,209 (CA1 1990), citing Voutour v. Vitale, 761 F. 2d 812,819 (CA1 1985); Guttierezz-Rodriguez v. Cartagena, 882 F. 2d 553, 562 (CA1 1989); Monell v. Department of Social Services, 436 U.S. 658, 694 n. 58 (1978)

[9] O'Neill v. Baker, 210 F. 3d 41 (CA1 2000); Stoute v. Berman, 555 F. Supp. 507, 511 (D.Mass. 1982); Delaney v. Dias, 415 F. Supp. 1351, 1353-54 (D.Mass 1976)

[10] Barreto-Rivera v. Median-Vargas, 168 F. 3d 42 (CA11999); Bowen v. City of Manchester, 966 F. 2d 13, 20 (CA1 1992); Manarite v. City of Springfield, 957 F. 2d 953, 957 (CA1 1992); Figueroa v. Aponte-Rogue, 864 F. 2d 947, 953 (CA 1 1989).

[11] Gaudreault 923 F. 2d at 209, citing Voutour, 761 F. 2d at 820; Gutierrez-Rodriguez, 882 F.2d at 562.

[12] O'Neill v. Baker, 210 F. 3d 41 (CA1 2000).

[13] Aponte Matos v. Toledo-Davila, 135 F. 3d 182 (CA1 1998); Warren v. Maine State Prison, 490 F. Supp. 2d 9 (D. Me. 2007); Buchanan ex rel. Estate of Buchanan v. Maine, 417 F. Supp. 2d 45 (D. Me. 2006)

DEFENDANTS' REQUESTED JURY INSTRUCTION NUMBER 7

Liability of each defendant under sec. 1983
[All defendants]

King Downing must prove that each of the defendants has violated a specific constitutional right.[14]  The burden of proof is on King Downing for all of his claims.  Although there are five defendants in this action, it does not follow from that fact alone that if one is liable, the others are liable.  Each defendant is entitled to a fair consideration of his own defense, and is not to be prejudiced by the fact, if it should become a fact, that you find against another defendant.[15]

---

[14] Paul v. Davis, 424 U.S. 693, 700 (1976)
[15] United States v. Auguecci, 310 F. 2d 817, 829 (CA2 1962).

DEFENDANTS' REQUESTED JURY INSTRUCTION NUMBER 8

Massachusetts Civil Rights Act
[Defendants Robbins and DiDomenica]

In order to prevail on a claim under the Massachusetts Civil Rights Act, King Downing must prove by a preponderance of evidence the following three elements. First that he is entitled to the exercise or enjoyment of rights secured by the Constitution or laws of either the United State or of the Commonwealth. Second, that these rights have been interfered with or attempted to be interfered with by the defendant. Third, that the interference or attempted interference was by threats, intimidation or coercion.

**SECURED RIGHT**

To establish the first element of his claim, King Downing must prove by a preponderance of the evidence that he was engaged in the exercise or enjoyment of rights secured by the Constitution or by the laws of the United States or of the Commonwealth. The term "secured" means "created by, arising under or dependent upon," rather than "fully protected." A right is secured by the Constitution or laws if it emanates from the Constitution or from the laws; if it finds its source in the Constitution or the laws of the United States or of the Commonwealth. In this case, the plaintiff alleges that he was engaged in or enjoying his right to not be subjected to unreasonable seizures. That right is secured by the Constitution, specifically the Fourth Amendment.

**INTERFERENCE OR ATTEMPTED INTERFERENCE**

To establish the second element of his claim, King Downing must prove by a preponderance of the evidence that the defendants interfered with or attempted to interfere with his right to be free

from unreasonable seizure. To "interfere" means to hinder, impede, intrude, or meddle in the affairs of another.

### THREATS, INTIMIDATION, OR COERCION

The third element King Downing must prove is that the defendants interfered with or attempted to interfere with his enjoyment of secured rights by threats, intimidation, or coercion. The Massachusetts Civil Rights Act protects rights secured by the Constitution or laws of the United States, or rights secured by the constitution or laws of this Commonwealth, only against interference or attempted interference "by threats, intimidation or coercion." Those words must be applied according to their natural connotation, that of forcing submission by conduct calculated to frighten, harass, or humiliate. When considering whether the defendant threatened, intimidated, or coerced the plaintiff, you are to consider the issue with an objective standard, that is, whether a reasonable person in the plaintiff's circumstances would be threatened, intimidated, or coerced by the defendant's conduct. In determining how a reasonable person would react in the same circumstances, you may consider how other persons actually responded to events in this case. In order to recover under the Massachusetts Civil Rights Act, the plaintiff must prove by a preponderance of the evidence that the interference or attempted interference with the secured right involved an actual or potential physical confrontation accompanied by a threat of harm. The term "threat" involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. The term "intimidation" means the putting in fear for the purpose of compelling or deterring conduct. The term "coercion" means "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Stated differently, "coercion" is the active

domination of another's will, or the use of physical or moral force to compel another to act or assent, or to refrain from acting or assenting. However, in order for you to determine a seizure occurred, you must be able to conclude that coercion, not voluntary compliance, most accurately describes the encounter.[16] In the absence of evidence of coercion, "otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person."[17] Since most individuals tend to feel some degree of compulsion when confronted by law enforcement officers asking questions, such discomfort cannot be the measure of a Fourth Amendment seizure.[18] In sum, "unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment."[19] If the defendants' words could reasonably be understood only to express an intention to use lawful means to hinder the plaintiff, those words would not be a threat, intimidation, or coercion actionable under the Massachusetts Civil Rights Act. In other words, a threat to use lawful means to reach an intended result is not actionable under G.L c. 12 sec. 11I. It is important to note, that in creating the Massachusetts Civil Rights Act, the legislature did not intend to create a vast constitutional and statutory tort, and the legislature's insertion of the requirement of threats, intimidation, or coercion was specifically intended to limit liability under the Act.[20]

---

[16] *Smith* at 28 citing Mendenhall, 446, U.S at 554
[17] Smith, 28 citing Mendenhall, 446, U.S at 555
[18] Smith 28
[19] *United States v. Smith*, 423 F.3d 25, 29 (2005). (citing *INS v. Delgado*, 466 U.S. 210, 217 91984).
[20] *Freeman v. Planning Bd. of West Boylston*, 419 Mass. 548, 564, 646 N.E.2d 139, 149, *cert. denied*, 516 U.S. 931 (1995); *Bally v. Northeastern Univ.*, 403 Mass. 713, 718, 532 N.E.2d 49, 52 (1989). *See also Tedeschi v. Reardon*, 5 F.Supp.2d 40, 46 (D.Mass. 1998); *Reproductive Rights Network v. President of the Univ. of Mass.*, 45 Mass.App.Ct. 495, 505-06, 699 N.E.2d 829, 837 (1998)

## DEFENDANTS' REQUESTED JURY INSTRUCTION NUMBER 9

### CREDIBILITY

In the course of this trial, you have had the opportunity to hear the testimony of a number of witnesses called by the parties in the case. In evaluating the testimony of a witness, you may accept or reject, in whole or in part, the testimony presented to you. In other words, you may accept or reject a witness' testimony in its entirety, or you may pick and choose which portions of the witness' testimony you consider trustworthy. The credibility of each and every witness is a question for you the jury to decide. You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witnesses, or by the manner in which the witnesses testified, or by the character of the testimony given, or by evidence to the contrary of the testimony given.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor while on the stand. Consider the witness' ability to observe the matters as to which he has testified, and whether he impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently; and innocent mis-

12

recollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood. After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.

Therefore, in deciding whether to believe a witness' testimony, you can consider whether the witness has made an inconsistent statement on an earlier occasion. To consider the earlier statement in considering the witness' credibility, the earlier statement need not directly contradict the testimony at trial, but must only have implications which tend in a different direction. If a witness' testimony at trial is different from her/his earlier statement, you can consider that in determining how much weight to give to any of her/his testimony, and not just to the testimony on which the inconsistency exists.

DEFENDANTS' REQUESTED JURY INSTRUCTION NUMBER 10

Qualified Immunity
[Defendants Robbins & Didomenica]

A government official sued in his individual capacity for alleged constitutional violations is entitled to have his own particular "actions ... assessed on their own terms," to determine whether his discretionary actions are immune from liability, because an official in his position had no reason to know the acts were unconstitutional. You may consider all of the evidence concerning Colonel Robbins and Sergeant Didomenica' actions, to decide whether you believe an official in their position knew or had reason to know in 2003 that their acts preparing and creating the Behavioral Assessment Screening System ("BASS") were unconstitutional. It is King Downing's burden to prove to you that Colonel Robbins and Sergeant Didomenica are not entitled to this immunity. If you find that Robbins or Didomenica did not know or have reason to know that they made unconstitutional decisions about the BASS program, then you may find that Robbins or Didomenica Evans are entitled to immunity from any liability to Downing.[21]

The immunity provisions of the Massachusetts Civil Rights Act are patterned after federal § 1983 law. Thus if you find Robbins or Didomenica are entitled to qualified immunity from liability on the federal Fourth Amendment claim, you must find they are entitled to qualified immunity on the state civil rights claim as well.[22]

---

[21] Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999)(" Camilo-Robles II"); Camilo-Robles v. Hoyos, 151 F.3d 1, 12 (1st Cir. 1998)(" Camilo-Robles I"); Saucier v. Katz, 533 U.S. 194, 206 (2001)(officials entitled to immunity for reasonable mistakes as to legality of their actions); Suboh v. District Attorney's Office for the Suffolk District, 298 F.3d 81, 90 (1st Cir. 2002)(ADA entitled to immunity when not privy from subordinates to facts material to constitutional violation); Fabiano v. Hopkins, 352 F.3d 447, 457-58 (1st Cir. 2003)(close question on constitutional claim, plus past questions of judgment and conflict of interest do not support clearly established right).
[22] *Duarte v. Healy*, 405 Mass. 43, 46-47, 537 N.E.2d 1230, 1232-1232 (1989); *Rodrigues v. Furtado*, 410 Mass. 878, 881-882, 575 N.E.2d 1124, 1127 (1991).

Even if Colonel Robbins and Sergeant Didomenica were mistaken in their beliefs, they are still entitled to qualified immunity.

<u>DEFENDANTS' REQUESTED JURY INSTRUCTION NUMBER 11</u>

Damages
[All Defendants]

My instructing you on the issue of damages does not mean that you, the jury, should find any damages. Should you reach this issue, the burden is on King Downing to prove by a preponderance of the evidence (1) that the injuries complained of by him exist, and (2) that those injuries are the result of the incident in questions. You are not permitted to award damages for injuries which are speculative or conjectural. Thus, if King Downing fails to carry the burden of proving the existence of any injuries, or that those injuries were proximately caused by the incident, then he is not entitled to recover damages in this action.[23]

Damages must be reasonable. If you should find that King Downing is entitled to a verdict, you may award him only such damages as will reasonably compensate him for his loss, as established by a preponderance of the evidence in the case, and which were sustained as a proximate result of the defendants' conduct. Only damages which are the direct and natural result of the alleged incident may be recovered as compensatory damages.

You are not permitted to award speculative damages. So, you are not to include in any verdict, compensation for any prospective loss which, although possible, is not reasonably certain to occur in the future.[24] You, the jury, must not speculate on any abstract value of a civil rights violation.[25]

---

[23] Restatement of Torts sec. 912
[24] Bigelow v. RKO Radio Pictures, Inc. , 327 U.S. 251 (1946);
[25] Memphis Community School Dist. V. Stqchura, 477 U.S. 299 (1986); Santana v. Registrar of Voters of Worcester, 398 Mass. 862 (1987).

## **CERTIFICATE OF SERVICE**

  I, Mary O'Neil, Assistant Attorney General, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the notice of electronic filing (NEF) and paper copies will be sent to those indicated as non-registered participants by first class mail, postage prepaid.

       /s/ Mary O'Neil
       Assistant Attorney General
       Trial Division

Dated: November 28, 2007