# United States District Court
# District of Massachusetts

KING DOWNING,
    Plaintiff,

v.     CIVIL ACTION NO. 2004-12513-RBC

MASSACHUSETTS PORT AUTHORITY,
MASSACHUSETTS STATE POLICE,
THOMAS G. ROBBINS,
PETER J. DIDOMENICA,
    Defendants.

# *JURY INSTRUCTIONS ON SPECIFIC CLAIMS*

Mr. Downing brings a claim under the federal civil rights act alleging that he was unlawfully detained by Massachusetts State Police Officers at Logan Airport on October 16, 2003.

The claim arises under a statute passed by the Congress of the United States, which provides:

> Every person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States ...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

Essentially, the statute grants a citizen the right to bring a civil action against any person who subjects that citizen to a **deprivation** of a right secured by the United States Constitution. In order to prevail, the citizen must prove that the person who committed the deprivation was, at the time, acting "under color of law." This last item is not an issue in this case - it is undisputed that any actions taken in this case were taken by police officers in the course of their official duties. When a person acts on duty as a police officer, he or she acts "under color of law."

The key issue then is whether Mr. Downing has proved that he was deprived him of a right secured by the United States Constitution, that right being the right under the Fourth Amendment of the United States Constitution which protects citizens from unreasonable searches and seizures. The amendment provides, in pertinent part, that:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated...

An involuntary detention would be a seizure of the person, and the Fourth Amendment gives the right to citizens not to be subjected to unreasonable seizures of their persons.

Now the Supreme Court has given content to the term "unreasonable" as

used in the Fourth Amendment context with respect to "seizures of persons." First, in order to arrest a person, a police officer must have probable cause to believe that the person has or is in the process of committing a crime. If a police officer arrests a person without probable cause, an "unreasonable seizure" has occurred. Second, the Supreme Court has held that police may also conduct so-called "investigative stops" based upon reasonable suspicion supported by articulable facts. This is also called a *Terry* stop; that name comes from the 1968 case, *Terry v. Ohio,* in which the Supreme Court established the law with respect to investigative stops. A police officer who observes a person under suspicious circumstances may detain the person for the purpose of investigating criminal behavior. However, the police officer must be able to articulate specific facts which, taken together with the reasonable inferences which flow from the facts, warrant a conclusion that the person is or was involved in criminal activity. In such a case, the stop is reasonable and not a violation of the Fourth Amendment. A detention not based on reasonable suspicion supported by articulable facts is an unreasonable seizure under the Fourth Amendment, or, an unlawful detention. I will tell you that a stop based solely on a person's race or ethnicity is not lawful.

Third, a police officer is free to question a person and do such things as

ask for identification or travel documents so long as the person is free to refuse the request and free to leave. As a matter of law, I instruct you that in the absence of probable cause for an arrest or reasonable suspicion for a *Terry* stop, a person has the right to decline to comply with a police officer's request to see identification and/or travel documents or a request to remain and not leave. I further instruct you that this principle applies in public areas, which includes the non-secure area of Logan Airport.

If a person is free to leave, the person cannot be said to be detained. It does not matter that perhaps a majority of people would accede to an officer's request voluntarily - that is their choice. But under our Constitution, they also have the right not to do so.

You see, when a person is arrested upon probable cause, or is the subject of a lawful *Terry* stop, the person is not free to leave. The person's liberty is curtailed. Any involuntary stops or detentions of persons by the police in the circumstances in which the police do not have probable cause to arrest or reasonable suspicion to detain are unreasonable and unlawful.

Now in this case, there is no contention that the police had probable cause to arrest Mr. Downing.

If you find that the police officers did have reasonable suspicion that Mr.

Downing was engaged in criminal activity based on specific articulable facts, any detention of Mr. Downing would be lawful under the *Terry* case. If you find that the police officers did not have reasonable suspicion that Mr. Downing was engaged in criminal activity based on specific articulable facts to do a *Terry* stop, any detention could not be justified on the grounds of *Terry*.

If Mr. Downing proves that any detention was not based on a valid *Terry* stop, you must go on to determine whether Mr. Downing has proven that the police acted in such a way that a reasonable person in Mr. Downing's position would not have felt free to leave. That is the test - if the police act in such a way that a reasonable person in the same circumstances would not feel free to leave, an unreasonable seizure(or unlawful detention) has occurred, and the person has been deprived of his right under the Fourth Amendment to be free from unreasonable seizures of his person. It is not necessary that Mr. Downing prove that the officers physically restrained him; rather it is necessary to prove that the police officers' actions in the circumstances were such that a reasonable person in those same circumstances would not feel free to leave.

In applying this test, you have to decide what, in fact, did happen during the interaction between Mr. Downing and the Massachusetts State Police Officers at Logan Airport. The evidence you have heard is in conflict on what

happened, and it is up to you, as the judges of the facts, to determine where the truth lies. When you have made that determination, you can apply the law to the facts as you have found them in order to determine the question presented to you.

The test is an objective one. It is not whether Mr. Downing himself thought he was not free to leave during the encounter. Rather, it is what a reasonable person in the same circumstances would have thought.

So once you have resolved the facts, you must decide whether Mr. Downing has proven by a preponderance of the evidence that what occurred was not a valid *Terry* stop, and if it was not, whether a reasonable person in the same circumstances that you find Mr. Downing was in during his encounter with the police on October 16, 2003 would not have felt free to leave. It does not matter if the time period is brief; it is enough if a reasonable person in the same circumstances would not feel free to leave, even for a short period of time.

If Mr. Downing has succeeded in proving that what occurred was not a valid *Terry* stop and a reasonable person in the same circumstances that you find he was in during his encounter with the police on October 16, 2003 would not have felt free to leave, he has proven that he was deprived of his right under the Fourth Amendment to be free from unreasonable seizures of his person, or

to put it another way, he has proven that he was unlawfully detained. If you find that a valid *Terry* stop occurred, or that Mr. Downing has failed to prove by a preponderance of the evidence that a reasonable person in the same circumstances would not have felt free to leave, he has not proven that he was deprived of his right to be free from an unreasonable seizure of his person, or, in another words, he has failed to prove that he has been unlawfully detained.

If Mr. Downing succeeds in proving that he was deprived of his right under the Fourth Amendment to be free from unreasonable seizures of his person, or to put it another way, if he has proven that he was unlawfully detained, it is not necessary for Mr. Downing to prove that Trooper Thompson and the other police officers with whom Mr. Downing had contact on October 16, 2003 had any specific intent to effect an unconstitutional seizure of his person, or to deprive Mr. Downing of his rights under the Constitution. Rather, it is sufficient if Mr. Downing proves that the Troopers intended to take the actions they did which resulted in the unlawful detention.

So the first question on the verdict form puts the issue. It reads:

1. Has the plaintiff, King Downing, proven by a preponderance of the evidence that he was unlawfully detained by Massachusetts State Police Officers on October 16, 2003 at Logan Airport?

You answer that question "yes" or "no."

If you have found that Mr. Downing has proven by a preponderance of the evidence that he was deprived of his right under the Fourth Amendment not to be unlawfully detained, that is, if you have answered "yes" to Question #1, you must go on to determine if defendant Didomenica and/or defendant Robbins are liable for the deprivation. If you answered "no" to Question #1, you need not answer any further questions.

Now with respect to defendants Didomenica and Robbins, it is undisputed that neither of them was part of the interaction between the Massachusetts State Police Officers and Mr. Downing on October 16, 2003; it is uncontested that neither was present. Therefore, any liability on their part would have to be based on their involvement with the PASS or BASS program.

The first step in the analysis of the claims against these two defendants who were not present is whether the plaintiff has proven by a preponderance of the evidence that the fact that the PASS or BASS program had been instituted at Logan and the Massachusetts State Police Officers had been trained in it was a substantial cause of the deprivation, or, put another way, the moving force behind the deprivation. What does this mean? In essence, it means that in order to succeed in his claims against defendants Didomenica and Robbins, Mr. Downing must prove that the deprivation, that is, the unlawful detention,

would not have occurred but for the fact the PASS or BASS program had been promulgated and that the Massachusetts State Police Officers had been trained in it.

Thus, if you find that the interaction between the Massachusetts State Police Officers and Mr. Downing would have resulted in a deprivation of Mr. Downing's right to be free from unlawful detention even if the PASS or BASS program had never been promulgated, Mr. Downing would have failed to prove that the PASS or BASS program was the cause or the moving force behind the deprivation. On the other hand, if you find that Mr. Downing has proven by a preponderance of the evidence that the deprivation would not have occurred but for the existence of, and the training in, the PASS or BASS program, he would have succeeded in proving that the existence of, and the training in, the PASS or BASS program was the moving force behind the deprivation.

So Question #2 puts the issue; it reads:

2.  If you answered "yes" to Question #1, has the plaintiff, King Downing, proven by a preponderance of the evidence that the PASS or BASS policy was the cause of (in the sense of having been the moving force behind) his unlawful detention by Massachusetts State Police Officers on October 16, 2003 at Logan Airport?

You answer that question "yes" or "no."

If you answer "yes" to Question #2, you must go on to decide whether

Mr. Downing has proven by a preponderance of the evidence that any actions of defendants Didomenica and Robbins in connection with the adoption, institution and training with respect to the PASS or BASS program were done with deliberate indifference to the known or obvious consequence that constitutional deprivations would result if the program were instituted and the Massachusetts State Police Officers were trained in it.

Under the law, in order for defendants Didomenica and Robbins to be liable for a constitutional deprivation, such as an unlawful detention, which was caused by their acts, Mr. Downing must prove that their acts were taken with deliberate indifference to the known or obvious consequence that persons would be unlawfully detained by Massachusetts State Police Officers under the program. Mr. Downing does not succeed by proving that the defendants Didomenica and Robbins were negligent - that is, careless - or even grossly negligent. Rather, Mr. Downing must prove that the defendants Didomenica and Robbins acted deliberately, that is, purposefully, to ignore (or to be indifferent to) the known or obvious consequence of the institution of, and the training of officers in, the BASS or PASS program that the result would be unlawful detentions, that is, unconstitutional seizures of persons.

So Question #3 and #Question #4 put that issue to you. Question #3

deals with defendant Didomenica; Question # 4 deals with defendant Robbins. They read:

> 3.
> If you answered "yes" to Question #2, has the plaintiff, King Downing, proven by a preponderance of the evidence that the defendant, Peter J. Didomenica, in the creation of and/or in the training of Massachusetts State Police Officers in the BASS or PASS program, acted with deliberate indifference to a known or obvious consequence that persons would be unlawfully detained by Massachusetts State Police Officers under the program?
>
> 4.
> If you answered "yes" to Question #2, has the plaintiff, King Downing, proven by a preponderance of the evidence that the defendant, Thomas G. Robbins, in the creation of and/or in the adoption of and/or in the training of Massachusetts State Police Officers in the BASS or PASS program, acted with deliberate indifference to a known or obvious consequence that persons would be unlawfully detained by Massachusetts State Police Officers under the program?

You answer each question "yes" or "no".

You are asked separate questions respecting defendants Didomenica and Robbins since each individual's liability depends on his own acts or his knowing participation in the acts of others.

If you answered "yes" to either Question #3 or Question #4 or both, you must proceed to the question of what damages you award to Mr. Downing for the unlawful detention.

These instructions as to the proper measure of damages are provided to

you in the event that you have found either defendant Didomenica or defendant Robbins or both liable on Mr. Downing's claim.

The purpose of compensatory damages is to make an injured party "whole" or to put the injured party in the same position, as nearly as possible as can be done with an award of money, as he would have been in had the unlawful activity not taken place.

However, damages in general and emotional damages in particular must be causally connected to the acts of the defendants to be recoverable.

Thus, with respect to damages the first principle that you must keep in mind in ascertaining the amount of damages is that you are not to award any damages for any injury or condition from which the plaintiff may have suffered or may now be suffering unless it has been established by a preponderance of the evidence in the case that the particular injury for which damages are sought was proximately caused by the act or acts of the defendant(s) which you have found.

Mr. Downing sustains his burden if he proves that there was a greater likelihood or probability that the particular injury complained of was due to the defendant's actions than to any other cause.

The second principle which you must keep in mind is that the damages

awarded must be reasonable.  If you should find that the plaintiff is entitled to a verdict, you may award only such damages as will reasonably compensate him for the injury he suffered and the damages as you find from a preponderance of the evidence that were caused by the defendant's wrongdoing.   Mr. Downing has the burden of proof on both issues.

In other words, the effort, if you found liability, is to compensate Mr. Downing by a monetary figure for those losses he suffered as a result of the defendant's wrongdoing that would reasonably compensate him for the losses that he has sustained or as near as possible as can be done with money put him in the position that he would have been in had the unlawful detention not occurred.

Damages need not be calculated to a mathematical certainty. By the same token, the calculation of damages may not be based upon speculation or conjecture.

Again, the damages must be reasonable; but on the other hand, Mr. Downing is, if liability is found, entitled to a full and fair damage award which reasonably compensates him for all losses which are found to have been caused by the unlawful detention.

What damages should be awarded?  In this case, the only compensatory

damages which Mr. Downing claims is for emotional distress and mental anguish. You may award the plaintiff damages which will compensate him reasonably for any emotional distress or mental anguish which he suffered as a result of the unlawful detention.

As is obvious, I cannot give you a formula to ascertain the amount of these damages. There are no objective guidelines by which you could measure the money equivalent of these elements of injury. The only real measuring stick is the collective enlightened conscience of the jury and the common sense of the jury to determine the amount of these damages.

In this difficult task of putting a money figure on an aspect of an injury that does not readily lend itself to evaluation in terms of money, you should try to be objective, calm and dispassionate and not to be unduly swayed by considerations of sympathy. On the other hand, you should bear in mind that although intangible, Mr. Downing is entitled to be compensated in a reasonable amount for any mental anguish and/or emotional distress which were caused by the unlawful detention.

The terms mental anguish or mental distress embrace such states as fright, nervousness, anxiety, worry, mortification, humiliation, embarrassment, apprehension, fear, things of that sort.

One last matter - if you have found liability but do not find that Mr. Downing suffered any compensatory damages as I have defined them, you must make an award of what is called in the law "nominal damages." Nominal damages are damages in name only - usually the sum of one dollar.

Question #5 puts the question with respect to compensatory or nominal damages. It reads:

5.
If you answered "yes" to either Question #3 or Question #4, what is the amount of damages you award to the plaintiff, King Downing?

You would enter an amount in the space provided.