UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KING DOWNING,
    Plaintiff,

v().

MASSACHUSETTS PORT AUTHORITY,
THE MASSACHUSETTS STATE POLICE,
THOMAS G. ROBBINS, and PETER J.
DIDOMENICA,
    Defendants.

Civil Action No. 04-12513-RBC

### DEFENDANTS THOMAS G. ROBBINS, PETER J. DIDOMENICA, AND THE MASSACHUSETTS STATE POLICE'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW

At the Court's direction defendants Thomas G. Robbins, Peter J. Didomenica, and the Massachusetts State Police file this supplemental memorandum in support of their Motion for Judgment As a Matter of Law.

Specifically, the Court directed plaintiff's counsel to explain whether the standard of deliberate indifference applies in this case, and, if so, what is their evidentiary support for plaintiff's contention that Robbins and Didomenica were deliberately indifferent to the Fourth and Fourteenth Amendment rights of the plaintiff. And further, to explain how any actions by Robbins or Didomenica were the proximate cause of any injury alleged by the plaintiff. The Court pointed out two cases to assist plaintiff in the inquiry: *Board of the County Commissioners of Bryan County*, 520 U.S. 397 (1997), and *Mailloux*

1

*v. Town of Middleton*, 473 F. Supp. 2d 177 (D. Mass 2007). Robbins, Didomenica and the Massachusetts State Police provide this memorandum to assist the Court.

I.  THERE IS NO EVIDENCE THAT ROBBINS OR DIDOMENICA WERE DELIBERATELY INDIFFERENT TO DOWNING'S FOURTH AMENDMENT RIGHTS.

Robbins and Didomenica cannot be found liable based upon a respondeat superior theory. *Monell v. Department of Social Services City of New York*, 436 U.S. 658 (1978). Nor is a negligence standard sufficient to impose liability on them. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). To find them culpable for any Fourth Amendment violation Downing must sustain his burden of showing that each of them was deliberately indifferent to his Fourth Amendment rights. *Id.* Deliberate indifference is a "stringent standard of fault, requiring proof that [Robbins and Didomenica] disregarded a known or obvious consequence of [their] action" in promulgating the BASS program. *Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 410 (1997); *see also Bordanaro v. McLeod*, 871 F. 2d 1151, 1161–63 (1st Cir. 1989). "[A]t the least the element of deliberateness requires both subjective appreciation of a risk of unconstitutional harm, and a risk substantial enough to justify the heightened responsibility that deliberate indifference entails." *Bryan County,* 520 U.S. at 421 (Dissent, J. Souter, Stevens, & Breyer).

Where, as here, Downing has focused on the BASS training program he has set a high bar: a training program must be very deficient to support a showing of deliberate indifference. Even if the training were imperfect or not to plaintiff's liking this is not sufficient to show deliberate indifference. *See Canton,* 489 U.S. at 391; *Palmquist v. Selvik,* 111 F.3d 1332, 1345 (7th Cir. 1997)(where town gave police officers some

2

training on handling suspects exhibiting abnormal behavior, argument that even more training should have been given failed). Downing's case failed to show any deficiencies in the training. Further the standard for assessing causation with a training allegation is a stringent one: the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* at 391; *see Bryan County,* 520 U.S. at 409-10.

Downing has failed to produce evidence to sustain his burden of showing that Robbins and Didomenica disregarded a known or obvious unconstitutional consequence of BASS. Such a spare evidentiary showing, in fact, no evidentiary showing at all, wholly fails to sustain his burden to prove that Robbins and Didomenica's decision to develop BASS reflected a deliberate indifference to any risk that a Fourth Amendment violation would occur. *Id.* at 411.

Moreover, Downing fails to show that the BASS program itself violates the Fourth Amendment. The BASS program[1] was introduced as Exhibit 2 at trial. Replete throughout the program is the requirement that any BASS encounter must be a voluntary one. The emphasis is not to use it as a law enforcement tool, i.e., its purpose is not the detention and prosecution of suspected criminals. But rather as a tool to study behaviors with the goal of protecting a critical infrastructure, in this case Logan International Airport. To that end, it seeks to keep out danger, not detain and prosecute it. It does not provide for an unreasonable seizure that would violate the Fourth Amendment.

Simply put, Downing failed to show that in their decision to establish BASS Robbins and Didomenica created an unconstitutional program, and were deliberately indifferent to any possible constitutional violations.

---

[1] With the requisite Transportation Safety Authority Redactions for Sensitive Security Information.

II. THERE IS NO EVIDENCE THAT ROBBINS AND DIDOMENICA'S DRAFTING OF THE BASS PROGRAM CAUSED ANY HARM CLAIMED BY DOWNING.

Inherent in Fourth Amendment liability are two concepts: fault and causation. The former is addressed by the requirement of deliberate indifference on the part of the individual as discussed above. The latter demands that this deliberate indifference be the cause of the harm allegedly suffered. *Bryan County*, 520 U.S. at 415. To avoid finding a policy maker culpable on the prohibited basis of *respondeat superior*, the tortuous act must be proximately caused by the policy maker. *Id*. at 425 (Dissent, J. Souter, Stephens, & Breyer). Thus, Downing must prove that Robbins and Didomenica in creating BASS were deliberately indifferent to the commission of constitutional violations, and BASS was the "cause of and moving force behind" Downing's particular complaint. *Mailloux v. Town of Littleton*, 473 F. Supp. 2d 177 (D. Mass. 2007).

Downing provided no evidence that BASS had any connection to his alleged injury. His case consisted of nothing more than his testimony that he did not know one way or the other whether the BASS program was used. And Downing's final witness, defendant Didomenica, was not at Logan International Airport during Downing's encounter on October 16, 2003. Thus, he did not – indeed, he could not – provide any testimony to support Downing's contention that he was unconstitutionally detained on that day. This was the extent of Downing's case. And his case was woefully inadequate to sustain his burden of showing that his alleged Fourth Amendment violation was caused by the troopers using any BASS program

His thought that maybe they did or maybe they did not use BASS is not evidence. Further, each of the troopers testified that they did not use it. They saw no need to use it

4

as they did not suspect Downing was a terrorist. Those troopers who had a concern, thought he might be an "irate", an agitated individual who trespasses and/or causes disturbances at Logan. Instead of presenting the image of Downing as a much feared terrorist, the evidence established that the concern was that he was a garden variety "irate."

Downing failed to provide evidentiary support to sustain his burden of establishing that Robbins and Didomenica were deliberately indifferent to his Fourth Amendment rights. He failed to sustain his burden that the BASS program was the proximate cause of his alleged Fourth Amendment violation. But ultimately, it is Downing's failure to establish any constitutional violation that is fatal to his claim. *Id.* at 190.

### III. THE ONLY EVIDENCE IS THAT THE BASS PROGRAM DEVELOPED BY ROBBINS AND DIDOMENICA DOES NOT RACIALLY PROFILE.

In addition to his Fourth Amendment claim, Downing presents a Fourteenth Amendment Claim: racial profiling. This claim is easily addressed: there is absolutely no evidence that the BASS program racially profiles in any way. In fact, all evidence shows that it does not. Exhibit 2 sets forth a number of slides that explicitly condemn racial profiling. Sergeant Didomenica testified at length that racial profiling is not permitted, and that the troopers are trained to that effect. Quite simply and obviously, it is against the law. Downing's musings that maybe he was or maybe he was not racially profiled do not amount to evidence. And while it is true that a member of one race can racially profile other members of that race, the testimony of the several African-

American troopers involved in Downing's encounter that they did not racially profile him undercuts his musings. There is absolutely no support for this claim.

### IV. IF THE COURT WERE TO DETERMINE A CONSTITUTIONAL VIOLATION EXISTS, ROBBINS AND DIDOMENICA ARE ENTITLED TO THE PROTECTIONS OF QUALIFIED IMMUNITY

"Qualified immunity shield state officials exercising discretionary authority from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware.'" *Souza v. Pina*, 53 F. 3d 423, 425 (1st Cir. 1995) *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity doctrine exists to protect state officials from "undue interference with their duties and from potentially disabling threats of liability." *Id.* at 806.

The First Circuit performs a three-part inquiry to determine whether an individual is entitled to qualified immunity. The first question requires resolving whether the plaintiff has alleged a violation of a federal constitutional or statutory right. As argued above Downing failed to produce any evidence that BASS allows for racial profiling or that it allows for unconstitutional detentions. This inquiry can end here. And Robbins and Didomenica can receive the protections of qualified immunity.

However, if the Court inquires further the next question becomes whether the right was clearly established at the time of the alleged violation. *Hatch v. Department for Children, Youth, and their Families*, 274 F. 3d 12, 20 (2001). It is a given that Downing, along with everyone else has Fourth and Fourteenth Amendment rights. That is not the requisite level of inquiry to determine whether the right was clearly established. The requisite level requires that the right be so clearly established that Robbins and

6

Didomenica would have been given "fair warning" that their proposed action was unconstitutional. *See U.S. v. Lanier*, 117 S. Ct. 1219 (1997)(in a case involving the criminal counterpart to section 1983, the Court stated the concept of "fair warning" for the defendant). Robbins and Didomenica never received any fair warning that BASS, the behavior based tool informed by the scientific understanding of human autonomic nervous system responses that they developed to protect Logan Airport from suspected terrorists, could be unconstitutional. In particular, it is hard to see how –given the slide's contents – they were given warning that BASS racially profiled or that BASS provided for unconstitutional detentions. Further, BASS is a prototype; by definition there is no case law that exists that would have warned Robbins and Didomenica of any likely constitutional issues. *Rodriguez Rodriguez v. Munoz Munoz*, 808 F. 2d 138, 142 (1st Cir. 986).

The last question requires determining whether an objectively reasonable official would have believed their acts violated constitutional or federal statutory rights. *Starlight Sugar, Inc. v. Soto*, 253 F. 3d 137, 141 (1st Cir. 2001). Both Robbins and Didomenica are lawyers. Robbins tasked Didomenica with researching and developing the security and constitutional issues involved in BASS. Didomenica testified at length concerning the exhaustive Fourth Amendment research he performed, as well as the counsel he received from experts in the field. He further testified to vetting the Ben Gurion airport protocol, and of his removal of those sections he found that did not pass constitutional muster. Indeed, at the end of Didomenica's testimony it was difficult to imagine a more thorough and objectively reasonable official. And this objectively reasonable official did everything in his power to protect constitutional rights. There is nothing in what he and

Robbins did or in BASS that would have led them to believe their acts violated constitutional or federal statutory rights.

And if this Court truly believes that Robbins and Didomenica were mistaken, they are still entitled to qualified immunity. The doctrine of qualified immunity provides protection for mistaken judgments. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986)(qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."). The evidence in this case clearly demonstrates that Robbins and Didomenica are highly competent officials who would have had no reason to know they were violating the law. [2] But again, no law was violated here.

    V.    THE MASSACHUSETTS STATE POLICE ARE NOT PROPERLY BEFORE THE COURT.

        A. The State Declaratory Judgment Act Does Not Provide for Federal Jurisdiction

Downing brought a claim against the Massachusetts State Police under the Massachusetts State Declaratory Judgment Act, Mass. G. L. c. 231A, sec. 1. In part, this act provides as follows:

> **"The supreme judicial court, the superior court, the land court and the probate courts, within their respective jurisdictions, may** on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen …(emphasis supplied)

---

[2] Although the Court did not request argument on this, the affirmative defense of qualified immunity would apply to the State Civil Rights Claims alleged by Downing. Further, these claims should fail because they suffer from the same infirmities present in the federal claims. Moreover, G.L. c. 12, sec. 11I also requires that Downing prove that Robbins and Didomenica violated his constitutional rights through threats, intimidation and coercion.

Simply put, the Massachusetts Declaratory Judgment Act does not provide for federal court jurisdiction. As such, the Massachusetts State Police are not properly before this Court.

### B. Declaratory Judgment Does Not Provide An "End Run" Around the Eleventh Amendment

The Massachusetts State Police have further objections to Downing's request for declaratory relief under M.G. L. c. 231A sec. 1. Where, as here, there is no live claim for prospective injunctive relief the Eleventh Amendment renders both declaratory relief and notice relief improper. *Green v. Mansour*, 474 U.S. 64 (1985); *see Massachusetts Hospital Association v. Harris*, 500 F. Supp. 1270, 1280 & n.7 (D. Mass. 1980)(because plaintiff's claims for prospective injunctive relief were moot, the court lacked jurisdiction of plaintiff's claims for declaratory and notice relief relating only to past conduct by state officials). The Eleventh Amendment provides that the Commonwealth has sovereign immunity from any suit for monetary damages. Further, the only exception to this immunity is for prospective injunctive relief – a remedy neither requested, nor available here. *Ex Parte Young*, 323 U.S. 670 (1944).

### C. Downing Lacks Standing To Seek Equitable Relief.

In addition to the above arguments against Declaratory Relief, the State Police reiterate that federal court jurisdiction lies only where an actual case or controversy exists for resolution by the Court. U.S. Const. Art. III, sec. 2, cl. 1. The case or controversy requirement endures throughout the lifetime of an action so that "Article III considerations require that an actual case or controversy' must be extant at all stages of

9

review, not merely at the time the complaint is filed.'" *Ramirez v. Sanchez Ramos*, 438 F. 3d 92, 100 (1st Cir. 2006) *quoting Steffel v. Thompson*, 415 U.S. 452, 459 (1974).

Downing has rested. It is abundantly clear that his trial evidence failed to present the requisite case or controversy to this Court.

Further, he lacks the standing to request equitable relief because his alleged past harm does not provide standing for equitable relief absent "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Downing's speculations in his complaint and on the stand are insufficient to create standing for equitable relief.[3]

                                      Respectfully Submitted,

                                      COMMONWEALTH OF MASSACHUSETTS
                                      MASSACHUSETTS STATE POLICE, THOMAS
                                      G. ROBBINS, and PETER J. DIDOMENICA

                                      By their Attorneys,

                                      MARTHA COAKLEY
                                      ATTORNEY GENERAL


                                      /s/____Mary O'Neil_____
                                      Mary O'Neil, BBO #379430
                                      Lisa J. Fauth, BBO #659505
                                      Assistant Attorneys General
                                      Government Bureau/Trial Division
                                      One Ashburton Place Room 1813
                                      Boston, MA. 02108-1598
                                      (617) 727-2200 x 2636

Dated: December 6, 2007

---

[3] While the line of Supreme Court cases addressing the issue of equitable relief deal with injunctive relief, the same principles apply to declaratory judgments. See American Postal Workers Union, et al. v. Frank, et al., 968 F. 2d 1373, 1377 & n.4 (citations omitted) (CA1 1992)

## CERTIFICATE OF SERVICE

I, Mary O'Neil, served the above defendants Robbins, Didomenica, and Massachusetts State Police's supplemental memorandum in support of their Motion for Judgment as a Matter of Law to all counsel by hand in court, and filed it with the clerk by hand in court on December 6, 2007.

/s/ Mary O'Neil

Mary O'Neil